## GAVALIS v. STATE OF INDIANA.

[No. 23,997.　Filed April 20, 1922.]

1. INTOXICATING LIQUORS.—*Unlawful Possession.—Indictment.—Certainty.—Failure to Describe Liquor.—Statutes.*—An indictment for unlawfully keeping "intoxicating liquor" with intent to sell, in violation of §4 of the Prohibition Act (Acts 1917 p. 15, §8356a *et seq.* Burns' Supp. 1918), sufficiently describes the liquor alleged to have been unlawfully kept, in view of §2 of the act defining the words "intoxicating liquor" within the meaning of the act.　p. 44.

2. INTOXICATING LIQUORS.—*Unlawful Possession.—Indictment.—Sufficiency.*—An indictment for unlawful possession of intoxicating liquor with intent to sell, in violation of §4 of the Prohibition Act (Acts 1917 p. 15, §8356a *et seq.* Burns' Supp. 1918), need not allege that the liquor was to be used as a beverage.　p. 44.

3. INDICTMENT AND INFORMATION.—*Description of Offense.—Statutory Definition in General Terms.*—Where the definition of an offense includes generic terms, or where the statute defines the crime in general terms, the pleader must resort to particulars in an indictment.　p. 45.

4. INDICTMENT AND INFORMATION.—*Sufficiency.—Nature and Cause of Accusation.—Constitutional Provisions.*—The general rule, in criminal pleading, requiring the material facts constituting the offense to be positively alleged, is a constitutional right of the accused under Art. 1, §13, Constitution giving him the right to demand the nature and cause of the accusation and to have a copy thereof.　p. 45.

5. INTOXICATING LIQUORS.—*Prohibition Act.—Liquors Included.*—Under §4 of the Prohibition Act (Acts 1917 p. 15, §8356a *et seq.* Burns' Supp. 1918), the prohibition against keeping intoxicating liquors means liquor of the character reasonably likely or intended to be used as a beverage.　p. 45.

6. CRIMINAL LAW.—*Appeal.—Review.—Denial of New Trial.—Conflicting Affidavits.*—In a criminal prosecution, where two of the state's witnesses, on being arrested upon a charge of perjury and placed in jail, made verified confessions that their testimony at the trial was false, but, after their release from custody under bond procured by defendant, made affidavits that their testimony was true, *held* that the action of the trial court in denying a new trial because of such confessions was not erroneous.　p. 47.

7. WITNESSES.—*Impeachment.—Conflicting Affidavits.*—Where two of the state's witnesses, on being arrested on a charge of perjury and placed in jail, made affidavits that their testi-

mony at the trial was false, but subsequently made counter-affidavits that their testimony was true, the affidavits first made might be used by way of impeachment in event of another trial.  p. 47.

8. CRIMINAL LAW.—*New Trial.—Newly-Discovered Evidence.— Impeaching Evidence.*—A new trial will not be granted on the ground of newly-discovered evidence where such evidence merely tends to impeach the testimony of a witness.  p. 47.

9. CRIMINAL LAW.—*New Trial.—Grounds.—Newly-Discovered Evidence.*—Under §2158 Burns 1914, Acts 1905 p. 584, §282, relating to new trial, the newly-discovered evidence contemplated as ground for new trial is such as will probably change the result, and, in determining whether it would have that effect, it should be considered in connection with all the other evidence in the case.  p. 49.

From Lake Criminal Court; *Martin J. Smith,* Judge.

Prosecution by the State of Indiana against Algerd J. Gavalis. From a judgment of conviction, the defendant appeals. *Affirmed.*

*A. P. Twyman* and *R. M. Royce,* for appellant.

*U. S. Lesh,* Attorney-General, and *Mrs. Edward Franklin White,* for the state.

MYERS, J.—Appellant was convicted in the Lake Criminal Court on an indictment charging that on May 31, 1920, he "did then and there unlawfully keep and have in his possession certain intoxicating liquor, with intent then and there to unlawfully sell, barter, exchange and give away" the same in violation of §4, Acts 1917 p. 15, §8356d Burns' Supp. 1918, known as the Prohibition Law. On appeal to this court appellant has assigned as error the overruling of his motion to quash the indictment, and the overruling of his motion for a new trial.

Appellant insists that the indictment did not charge a public offense for the reasons: (1) It failed to state the nature of the intoxicating liquor alleged to be kept for unlawful sale; and (2) it failed to state that the intoxicating liquor when sold was to be used as a beverage.

As a part of the Prohibition Law of this state, §2, Acts 1917 p. 15, *supra,* the general assembly defined the words "intoxicating liquor" as used in that law.

1. This definition is the same as that given to the same words in former liquor laws of this state except it is broadened to cover all drinks, mixtures or preparations containing as much as one-half of one per cent. of alcohol by volume. The question we are now considering is one of pleading. In that respect this court has several times ruled that the words "intoxicating liquor" in an indictment or affidavit sufficiently described the liquor in a liquor violation charge. *State* v. *Hannum* (1876), 53 Ind. 335; *Hooper* v. *State* (1877), 56 Ind. 153; *Wills* v. *State* (1879), 69 Ind. 286; *Buell* v. *State* (1880), 72 Ind. 523; *Donovan* v. *State* (1908), 170 Ind. 123, 129, 83 N. E. 744.

The charge in the case first cited was an unlawful sale of intoxicating liquor to a minor. The trial court sustained a motion to quash the indictment on the ground of uncertainty. On appeal, the judgment of the trial court was reversed for the reason that the description of the liquor as "intoxicating liquor" was sufficient in all such prosecutions. The court said: "The act defined what intoxicating liquor shall include; there can be, therefore, no uncertainty about it and no cause of surprise to the person accused. And such an allegation falls strictly within the principles of pleading." On this point we conclude the indictment in the instant case sufficiently characterized the liquor alleged to have been unlawfully kept.

Appellant further insists that the indictment is bad for failing to allege that the intoxicating liquor so kept was to be used as a beverage. If the phrase "to

2. be used as a beverage" was a part of the statute defining the offense, as was the case in the Sunday holiday law, (Acts 1877 p. 92) then appellant's po-

sition in this particular would be correct. *Dowdell* v. *State* (1877), 58 Ind. 333; *Allman* v. *State* (1879), 69 Ind. 387; *State* v. *Buckner* (1886), 20 Mo. App. 420. So also would his position be in point in case the
3. definition of the offense included generic terms, or where the statute defines the crime in general terms, the pleader in such cases must resort to particulars. *State* v. *Metsker* (1908), 169 Ind. 555, 83 N. E. 241; *Terre Haute Brewing Co.* v. *State* (1907), 169 Ind. 242, 82 N. E. 81; *State* v. *Bridgewater* (1908), 171 Ind. 1, 85 N. E. 715; *Hinshaw* v. *State* (1919), 188 Ind. 147, 122 N. E. 418. This general rule, in criminal pleading, requiring the material facts constituting the of-
4. fense to be positively alleged, is nothing more or less than a constitutional right of the accused "to demand the nature and cause of the accusation against him, and to have a copy thereof." Art. 1, §13, Constitution of Indiana.

In the instant case it will be noticed that the phrase "to be used as a beverage" is not a part of the section of the statute defining and creating the offense
5. with which appellant is charged. It appears in the section of the act (§2) defining the words "intoxicating liquor." The enactment (Chapter 4, approved February 9, 1917), as appears from its title, pertains only to the absolute prohibition of all liquors containing so much as one-half of one per cent. of alcohol by volume, and the general assembly, by its definition of the words "intoxicating liquor," has incorporated and included all liquors "reasonably likely and intended to be used as a beverage." Hence, to keep intoxicating liquor as here charged must be regarded as clearly meaning liquor of the character reasonably likely or intended to be used as a beverage, for, as we have seen, the general assembly of this state has so expressed in no uncertain language. *State* v. *Carpenter* (1863), 20 Ind.

219; *Simpson* v. *State* (1861), 17 Ind. 444; *Coverdale* v. *State* (1878), 60 Ind. 307; 23 Cyc 228.

Finally, appellant insists that his motion for a new trial should have been sustained on the ground that two of the principal witnesses for the state, subsequent to the trial, made verified confessions to the effect that their testimony given upon the trial was false and because of newly-discovered evidence material to appellant's defense. An examination of the record will disclose that a verdict finding the appellant guilty was returned July 29, 1920. On August 23, 1920, the two parties, father and son, who made the two confession affidavits, were arrested upon a charge of perjury based upon their evidence given at the trial of appellant. They were placed in jail. About an hour thereafter appellant and others appeared at the jail, and after gaining admittance, had an interview with the persons so charged with perjury, and by presenting certain facts to them they were led to believe their testimony given at the trial, to the effect that they were in appellant's place of business and procured alcohol on May 31, 1920, was untrue, and thereupon each made an affidavit that the testimony given by them at the trial was false and untrue. Upon making these affidavits, appellant and others signed a bond for their appearance to answer the perjury charge, and they were released from jail and taken home. On October 15, 1920, one of the parties who had made the so-called confession made a counter-affidavit stating that the evidence given by him at the trial of appellant was true and that the two affidavits of August 23 were made in order that they might be released from jail and upon a promise by appellant and others that they would not prosecute affiant or his son for perjury. The affidavits of August 23 were a part of the motion for a new trial. In opposition to that motion the state submitted to the court the affidavit of

October 15, 1920, together with affidavits of other persons to the effect that certain statements in the affidavits of August 23 were false.

The facts thus briefly stated on the point now under consideration were submitted to the trial court and resulted in a ruling adverse to appellant. As we view these various affidavits we cannot say that the trial court reached an erroneous conclusion or that the witnesses who made the affidavits of August 23 will, on a retrial, testify materially different from their original testimony, or that they will testify to any facts tending to destroy their previous evidence. For these reasons, the instant case must be distinguished from the case of *Dennis* v. *State* (1885), 103 Ind. 142, 2 N. E. 349. The affidavits repudiated by a later affidavit might be used by way of impeachment, but under the settled rule of this court, a new trial will not be granted on the ground of newly-discovered evidence which merely tends to impeach the testimony of a witness or show that his testimony at a former trial was false. *Hire* v. *State* (1896), 144 Ind. 359, 43 N. E. 312.

Additional alleged newly-discovered evidence is shown by separate affidavits of three employes—gate keeper, paymaster and assistant paymaster, respectively—of the Inland Steel Company, showing that the alleged purchasers of alcohol from appellant were at that time in the employ of the steel company, beginning work at 7:36 and 7:37 o'clock on the morning of May 31, and each left the steel plant at 3:58 o'clock in the afternoon of the same day, and that they were paid by the steel company for the time thus shown they had worked. These three affidavits bear date of August 25, 1920.

Further supporting the motion is the affidavit of appellant stating that on August 3, 1920, and three days after the trial had concluded, he first learned of the facts detailed in the above three affidavits, and on Au-

gust 23, of the facts mentioned in the confessions; that he did not know and could not have known, by the exercise of reasonable diligence, of any such facts before or at the time of the trial, nor that the prosecuting attorney would, on the last day of the trial, attempt to prove that one of his witnesses, who testified as having been in his employment from January 1, 1920, continuously to the day of the trial, was not so employed by him during such period; that had he known of such attempt he would have produced certain account books and documents in corroboration of such witness.

It may be well to state that appellant filed three additional affidavits tending to show that the affidavits of August 23, were made freely and without any coercion, force or threats from appellant or those representing him.

The indictment in this case was returned July 26, 1920. The evidence of the two witnesses sought to be broken down by the alleged newly-discovered evidence was to the effect that they bought alcohol of appellant between nine and ten o'clock in the morning of the day celebrated as Decoration Day. They said it was a holiday. They did not know whether it was Sunday or Monday. Appellant, by his own evidence and the evidence of one of his clerks, tended to show that he was not at his drug store before 11:30 o'clock on May 31, or before 1:00 o'clock on Sunday, May 30; that after March 1, he had received at his store sixty gallons of alcohol which he says was used for making up preparations and was medicated according to government formula. He denied selling alcohol to a certain person who testified that he did so in February before, or selling whiskey or alcohol colored to look like whiskey to any one, although such testimony was given by a little girl who sold papers at his store. He had been arrested five times for violating the liquor law within the six

weeks next before this his first trial, and his clerk had
been arrested three times, tried on one charge and ac-
quitted.   A representative of the internal revenue serv-
ice testified that according to government regulations
he assisted the prohibition enforcement department, or
co-operated with it in enforcing the prohibition law;
that on June 2, 1920, he was in appellant's drug store
and there saw thirty gallons of pure grain alcohol which
he was informed was purchased May 25.   The liquor
was in five gallon cans, apparently as shipped from
wholesale firms, and the bill for the same showed that
forty or fifty gallons had been purchased.   He estimated
that appellant had disposed of about ten gallons.   On
June 2, witness saw one John Daniels go into appel-
lant's drug store and after eight or ten minutes he came
out.   On his way from the drug store, without previous
arrangement, witness stopped him and obtained from
him a bottle, the contents of which was principally al-
cohol, but in appearance resembled whiskey.   The liq-
uor in this bottle was analyzed by the city chemist of
East Chicago, who testified that the analysis showed
fifty-seven per cent. by volume of alcohol and forty-
three per cent. water and inert ingredients, and brown
in color.   There was other evidence tending to show
that appellant mixed pure grain alcohol with water and
burned sugar and then sold it.   John Daniels was named
by the little girl in her testimony as one who bought
liquor at appellant's drug store.

Newly-discovered evidence is one of the statutory
grounds for a new trial.   §2158 Burns 1914, Acts 1905
p. 584, §282.   But the mere fact that such evi-
dence is new does not *ipso facto* warrant the
9.   granting of a new trial.   It is to be considered in
connection with the evidence upon which the accused
was convicted, and if when so considered there is a

strong probability of innocence, or that the proposed evidence would probably change the result, a new trial should be awarded. *Morse* v. *State* (1886), 108 Ind. 599, 9 N. E. 455; *Smith* v. *State* (1896), 143 Ind. 685, 42 N. E. 913; *Donahue* v. *State* (1905), 165 Ind. 148, 74 N. E. 996; *McCoy* v. *Purcell* (1915), 184 Ind. 154, 110 N. E. 658; *Stalker* v. *Breeze* (1917), 186 Ind. 221, 114 N. E. 968; *Scheigert* v. *Boyer* (1919), 69 Ind. App. 674, 690, 122 N. E. 670.

Appellant had the responsibility of making "a strong and clear case." *Swift* v. *Wakeman* (1857), 9 Ind. 552. The ruling on the motion rested upon all of the evidence which was more or less affected by weight and credibility clearly within the province of the trial court. Under such circumstances, this court will not interfere with such ruling, except upon error plainly shown, which in our judgment has not been done in this case. We find no ground for disturbing the decision of the trial court.

Judgment affirmed.