## KIMMEL v. STATE OF INDIANA.

[No. 24,643.    Filed November 18, 1926.]

1. INDICTMENT AND AFFIDAVIT.—*Facts constituting alleged criminal offense must be charged in direct and unmistakable terms.*— The Constitution of Indiana requires that the facts constituting an alleged offense shall be charged in direct and unmistakable terms, with clearness and all necessary certainty, so as to apprise the accused of the crime with which he stands charged (§65 Burns 1926).    p. 446.

2. HOMICIDE.—To constitute the crime of manslaughter, the death must be the natural result and the probable consequence of the unlawful act upon which the charge of homicide is based.    p. 446.

3. HOMICIDE.—*Definition of manslaughter taken from the common law.*—The statutory declaration of what shall constitute the crime of manslaughter (§2416 Burns 1926) was adopted bodily from the common law.    p. 447.

4. HOMICIDE.—*Involuntary manslaughter by violation of law.*— One who does an act forbidden by positive law and which was the proximate cause of an injury which unintentionally caused the death of a person is guilty of involuntary manslaughter.    p. 451.

5. HOMICIDE.—*Requirements of indictment for involuntary manslaughter stated.*—An indictment for involuntary manslaughter in the commission of an act made unlawful by statute must state facts from which it affirmatively appears that the act done was in violation of the law and that such unlawful act was the proximate cause of the death of a human being which resulted therefrom.    p. 451.

6. HOMICIDE.—*Affidavit charging involuntary manslaughter in the driving of an automobile held insufficient.*—A count in an affidavit for involuntary manslaughter charging that the defendant, while driving an automobile at a street crossing, failed to keep to the right of the intersection of the centers of said highways and did unlawfully, feloniously and involuntarily kill one W by driving said motor vehicle against said W, thereby inflicting a mortal wound upon the head of said W, was insufficient, in the absence of averments as to the speed at which he was driving, the condition of the highways or other circumstances showing that he drove negligently or with a wanton disregard for the safety of others.    p. 453.

7. HOMICIDE.—*Affidavit charging involuntary manslaughter in driving automobile against a pedestrian at a street intersection, while violating traffic laws held insufficient.*—A count in an affidavit charging involuntary manslaughter which alleged

that the defendant, while driving an automobile "in a negligent and careless manner and with wanton and reckless disregard of the rights and safety of other persons," drove said automobile in and upon a street intersection and failed to drive to the right of the center of the intersection, and thereby ran against one W and inflicted a mortal wound upon her, was insufficient, in the absence of allegations of the speed at which he was driving, the condition of the streets at the intersection, whether the accident occurred before or after dark, and other circumstances preceding or attending the collision tending to show that defendant's violation of a statute was the proximate cause of the death of the party struck by the machine. p. 454.

From Allen Circuit Court; *Sol A. Wood,* Judge.

Grover H. Kimmel was convicted of involuntary manslaughter, and he appeals. *Reversed.*

*David E. Smith,* for appellant.

*U. S. Lesh,* Attorney-General and *George A. Matlack,* for the State.

EWBANK, J.—Appellant, who was the defendant below, was charged by an affidavit in two counts with the crime of involuntary manslaughter. A motion to quash each count for the alleged reasons that neither states facts sufficient to constitute a public offense and that neither states the offense charged with sufficient certainty, was overruled and defendant excepted. The jury returned a verdict finding him guilty as charged in the first count. Defendant's motion for a new trial for the alleged reasons that the trial court erred in the exclusion of certain evidence and in giving each of certain instructions, and that the verdict is not sustained by sufficient evidence and is contrary to law, was overruled and defendant excepted. Overruling the motion to quash each count of the affidavit and overruling the motion for a new trial are assigned as errors.

Besides the formal parts, the first count of the affidavit alleged that at, etc., on or about October 23, 1922, defendant "did then and there unlawfully drive and

operate a certain motor vehicle, to wit: an automobile, in and upon the intersection of Crescent avenue and State street, public highways in the city of Fort Wayne, * * * and did then and there unlawfully fail. and neglect to drive and keep to the right of the intersection of the centers of said highways when turning to the right, and did then and there unlawfully, feloniously, involuntarily and without malice kill one Maria E. Wright by then and there and thereby, while so operating and driving. the said motor vehicle, as aforesaid, running into and against and striking the said Maria E. Wright with his said motor vehicle, thereby feloniously and involuntarily inflicting a mortal wound in and upon the head of the said Maria E. Wright of which said mortal wound the said Maria E. Wright then and there died, contrary," etc.

The second count alleged that, at said time and place, defendant, "did then and there unlawfully drive and operate a certain motor vehicle, to wit: an automobile, in and upon the intersection of Crescent avenue and State street, public highways in the city of Fort Wayne, * * * in a negligent and careless manner, and with wanton and reckless disregard of the rights and safety of other persons using said highways, did then and there and thereby and while so driving and operating his said motor vehicle, as aforesaid, unlawfully, feloniously, involuntarily and without malice kill one Maria E. Wright by then and there running into and against the said Maria E. Wright with his said motor vehicle, thereby, feloniously and involuntarily, inflicting a mortal wound," etc.

The Constitution of Indiana requires that the facts constituting the alleged offense shall be charged in direct and unmistakable terms, with clearness and

1, 2. all necessary certainty, so as to apprise the accused of the crime with which he stands charged.

Art. 1, §13, Constitution, §65 Burns 1926; *Hinshaw* v. *State* (1919), 188 Ind. 147, 153, 154, 122 N. E. 418; *Bowen* v. *State* (1920), 189 Ind. 644, 128 N. E. 926; *Gavalis* v. *State* (1922), 192 Ind. 42, 45, 135 N. E. 147. "To constitute the crime of manslaughter, there must be such legal relation between the commission of the unlawful act and the homicide that it logically follows that the homicide occurred as a concomitant part of the perpetration of, or in furtherance of an attempt to commit, the unlawful act. Therefore it follows that death must be the natural result and the probable consequence of the commission of the unlawful act upon which the homicide is based." *Votre* v. *State* (1923), 192 Ind. 684, 686, 138 N. E. 257, and authorities cited.

The statutory declaration (§2416 Burns 1926, §351, Acts 1905 p. 584) of what shall constitute the crime of manslaughter is adopted bodily from the common-law definition. 4 Blackstone, Comm. 191; *Dunville* v. *State* (1919), 188 Ind. 373, 375, 123 N. E. 689.

And, under the rules of the common law, it is only negligence in doing such acts as will probably endanger life or limb which constitute that "gross and culpable negligence" that amounts to an "unlawful act" within the definition, even though not punishable as a crime. Many judgments convicting persons of involuntary manslaughter where death was caused by negligence have been upheld. But, so far as we are informed, in all jurisdictions that adhere to the common-law definition of manslaughter, the affirmance of such judgments invariably has been on the ground that the injury and death were shown to have resulted from negligence in doing something obviously dangerous to others which the defendant had attempted to do in wanton and reckless disregard of their safety. In holding that an engineer who negligently ran his locomotive engine into

a passenger car standing upon the railroad track and thereby destroyed the car and killed a passenger was liable to prosecution for manslaughter, this court said: "The unlawful act charged in the indictment shows such wantonness and recklessness as to constitute manslaughter, if not murder. We are of the opinion that the second count in the indictment is good." *State* v. *Dorsey* (1889), 118 Ind. 167, 169, 20 N. E. 777, 10 Am. St. 111.

In holding that mere proof of negligence on the part of the defendant in driving his motorcycle upon a city street at a rate of speed forbidden by statute, and in looking aside at some men who attracted his attention, did not show him to be guilty of manslaughter in striking with his motorcycle and killing a little child who ran into the street and stopped immediately in front of it, where he was unable to avoid her, this court said: "One may be guilty of involuntary manslaughter if he conducts himself, in a given set of circumstances, with such wilful disregard for the rights of others as to show a wanton recklessness as to the life and limb of other persons. It is also true that, if he is acting in violation of a positive statute  *  *  *  and this violation is the proximate cause of the death, the law then implies an intent to do the injury and makes him guilty of involuntary manslaughter. Whether the unlawful act committed is the one we have first above indicated, or the second one pointed out, it is always necessary that the evidence show that the unlawful act is the proximate cause of the death." And after having set out the evidence, and stated that the contention of counsel for the state was that if appellant was shown to have been violating the speed law, and to have been looking back, or looking to the side at some men who attracted his attention on the east side of the street, for which reason he did not see the child, he was there-

fore guilty of manslaughter, it continued: "It is not a question of contributory negligence, but it is one of proximate cause. So the question is, Did appellant conduct himself at the time and place in such a manner as to show a wilful and wanton disregard for the rights of others, from which the law infers an intent to cause death, and did his conduct cause the death? It will be conceded that, if appellant were driving his motorcycle down the street, and the facts showed that he saw, or had reason to know, that little children were upon the street who were of such tender age as not to know the danger or heed warning signals, it would be his duty so to conduct himself as not to injure them, and in the event that he wilfully and wantonly disregarded that duty and his conduct resulted in the death of one of them, he would be guilty of involuntary manslaughter. Circumstances could well be conceived in which he would be guilty of involuntary manslaughter if he drove the motor vehicle even at one mile an hour in a street crowded with little children—or even crowded with adults." But the court held that mere evidence of negligence on the part of defendant was not sufficient to sustain the conviction, in the absence of anything tending to show that the accident would not have happened if appellant had been proceeding in a careful manner. *Dunville* v. *State, supra.*

In *Reg.* v. *Longbottom* (1849), 3 Cox (Eng.) C. C. 439, 1 Bennet & Heard Lead. Cas. 66, the court said: "If anyone should drive so rapidly along a great thoroughfare leading to a large town, as to be unable to avoid running over any pedestrian who may happen to be in the middle of the road, it is that degree of negligence in the conduct of a horse and gig which amounts to an illegal act in the eye of the law; and if death ensues from the injuries then inflicted, the parties driv-

ing are guilty of manslaughter, even though considerable blame may be attributed to the deceased." In *Reg.* v. *Kew & Jackson* (1872), 12 Cox (Eng.) C. C. 355, the court said: "Being late for the train, Jackson was driving at a furious rate, at full gallop, and ran over a child going to school, and killed it. * * * If they (the jury) were of the opinion that the prisoners were driving at a dangerous pace in a culpably negligent manner, then they are guilty." In *Queen* v. *Salmon* (1880), 6 Q. B. Div. (Eng.) 79, 29 Wk. Rep. 246, in upholding the conviction for manslaughter of three men who unintentionally shot and killed a boy in his father's garden while firing in that direction at a mark hung in a tree about 1,000 feet from it, Lord Coleridge, C. J., said: "The conviction must be affirmed. If a person will, without taking proper precautions, do an act which is in itself dangerous, even though not an unlawful act in itself, and if in the course of it he kills another person, he does a criminal act which in law constitutes manslaughter."

"The law is regardful of human life and personal safety, and if one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequence of his act, and treats him as guilty of a wilful and intentional wrong. It is no defense to a charge of manslaughter, for the defendant to show that, while grossly reckless, he did not actually intend to cause the death of his victim. In these cases of personal injury there is a constructive intention as to the consequences, which, entering into the wilful, intentional act, the law imputes to the offender, and in this way a charge which otherwise would be mere negligence, becomes, by reason of a reckless disregard of probable consequences, a wilful wrong. That this constructive intention to do an injury, in such cases, will be imputed in the absence of an actual intent to harm

a particular person, is recognized as an elementary principle in criminal law." *Aiken* v. *Holyoke Street Railway* (1903), 184 Mass. 269, 68 N. E. 238.

Where an act that was itself forbidden by positive law has been the proximate cause of an injury which unintentionally caused the death of a person, the case comes squarely within the definition of involuntary manslaughter. There the involuntary killing has been done "in the commission of some unlawful act." §2416 Burns 1926, §351, ch. 169, Acts 1905 p. 584; *State* v. *Johnson* (1885), 102 Ind. 247, 249, 250, 1 N. E. 377; *Eaton* v. *State* (1904), 162 Ind. 554, 555, 70 N. E. 814. But, to be sufficient, an indictment or affidavit for involuntary manslaughter in the commission of an act made unlawfully by statute must state facts from which it will affirmatively appear that the act done was a violation of the law, and that such unlawful act was a proximate cause of the death of a human being which resulted therefrom. *Willey* v. *State* (1874), 46 Ind. 363, 367; *Eaton* v. *State, supra,* pp. 556, 557.

In holding that a person could not be proved guilty of manslaughter by evidence that while he was engaged in committing a misdemeanor he caused the death of a person by accident or mischance, in the absence of proof that the unlawful act he was doing was a proximate cause of such death, this court said: "Section 2215 Burns 1901 (§2807 Burns 1926) prohibits, under penalty, any person * * * hunting birds or other species of game with fire-arms on Sunday. If appellant, instead of carrying the pistol in question concealed, had been hunting with the weapon on Sunday in violation of the above statute, and when so hunting he had accidentally discharged it and killed Garnett, who happened to be standing nearby, could it, in reason, be asserted that his death was due to appellant's

unlawful act of hunting on Sunday? Certainly not. If while engaged in hunting, in violation of the statute, the pistol, through or by reason of the culpable negligence of appellant, had been discharged, and killed the deceased, the law, under such circumstances, would not have attributed his death to the unlawful act of hunting, but would have imputed it to such negligence. In fact, under such circumstances, the unlawful act of hunting would not be a factor in, or add anything to, the case. It would constitute nothing more than a separate and distinct offense. An eminent author or criminal law says: 'It is *malum prohibitum*, not *malum in se*, for an unauthorized person to kill game in England contrary to the statutes, if, in unlawfully shooting at game, he accidentally kills a man, it is no more criminal in him than if he were authorized.' 1 Bishop, Crim. Law (8th ed.) §332. See, also, 1 East, Pleas of the Crown 260; 2 Roscoe, Crim. Ev. 800. * * * It is not charged in the indictment in this case that the homicide resulted from the reckless, careless or negligent manner in which appellant was using or handling the pistol at the time it was discharged. * * * It will be readily seen that, under the charge made by the indictment, the case at bar does not fall within that class of cases where the homicide is the result of culpable carelessness or negligence * * * in using or handling a dangerous weapon." *Potter* v. *State* (1904), 162 Ind. 213, 216, 217, 218, 70 N. E. 129, 64 L. R. A. 942, 102 Am. St. 198, 1 Ann. Cas. 32. And further deciding that the accidental discharge of a pistol, causing death, "while" the defendant was unlawfully carrying it concealed in his pocket did not make him guilty of involuntary manslaughter, the court added: "The theory of the State in the lower court, as the case appears to have been placed before the jury under the evidence and instructions of the court, was that the

carrying of the revolver concealed by appellant, in violation of the statute, was the commission of an unlawful act from which the homicide resulted. It is undoubtedly true, as a general rule of law, that a person engaged in the commission of an unlawful act is legally responsible for all the consequences which naturally or necessarily flow or result from such unlawful act. But before this principle of law can have any application under the facts of the case at bar, it must appear that the homicide was the natural or necessary result of the act of appellant in carrying the revolver in violation of the statute." *Potter* v. *State, supra.*

Obviously, neither count of the affidavit in the case at bar states with certainty facts constituting the crime of manslaughter, within the rules above laid 6. down. The only facts stated in the second count are that the defendant drove an automobile in and upon the intersection of two public highways in Fort Wayne, and "while so driving" it, killed the deceased by running against her with the automobile and thereby inflicting a mortal wound. The conclusion is also stated that the driving was done in a negligent and careless manner, and with wanton and reckless disregard of the rights and safety of other persons using said highways. But no facts are stated as to the speed at which he was driving, the circumstances under which he was driving, the number of persons in the highways or their positions therein, the condition of the highways, or where or how he drove along or upon either of them, or any circumstance which preceded or attended the collision between the car and the deceased, from which it might appear that he drove negligently or with a wanton disregard for the safety of others. And it may be suggested that even this general charge of wanton and reckless disregard for the safety of persons in the highway was negatived by

the jury after hearing evidence of the facts, for defendant was found not guilty under the count containing that charge.

The first count, omitting the allegations found in the second count as to driving "in a negligent and careless manner and with wanton and reckless disregard of the rights and safety of other persons," alleges only the facts that defendant drove an automobile in and upon the intersection of said highways and failed "to drive and keep to the right of the intersection of the centers of said highways when turning to the right," and that he involuntarily killed Maria E. Wright by running against her, thereby inflicting a mortal wound "while so operating and driving the said motor vehicle." But it wholly fails to allege any facts as to the speed at which the car was driven, the place in the street at which it struck the woman, the surrounding conditions, whether the accident occurred before or after dark, and if the latter whether the place was otherwise lighted, or any attendant facts at all from which to make it appear that the proximate cause of the death of Maria E. Wright was an act of the defendant which was forbidden by postive law, or was one by which he wilfully and recklessly put the life or safety of a human being or human beings in peril, and then negligently failed to avoid inflicting the injury thus made probable. And as indicating the sense in which the language of this count which we have set off by quotation marks was used by the pleader and understood by the jury and the trial court, we note that the undisputed evidence, introduced by the state, was that the deceased at the time she was struck was not on the left side of the "intersection of the centers of the highways," but was walking south across State street, in line with the sidewalk west of or at the right hand side of Crescent street, ten feet or more west of the

west curb of a twenty-eight-foot roadway therein, Crescent street being the one in and along which defendant drove south to where he turned west (toward the right) upon State street across which Miss Wright was going when injured.

Where the acts charged to have been done were lawful, such as operating an automobile in and along a highway, the mere use of epithets by way of alleging that they were done with wanton and reckless disregard of the safety of others, as in the second count, cannot supply the lack of facts showing that something which the defendant did was unlawful or was done in an unlawful manner. And where an allegation that the defendant did an unlawful act is relied on, as in the first count, the mere averment that "while" this unlawful act was being done, the defendant killed another by accident or mischance does not supply the place of averments of facts showing that the alleged unlawful act was a proximate cause of the homicide. The motion to quash each affidavit for uncertainty should have been sustained. We do not find it necessary to pass upon the other questions discussed by counsel.

The judgment is reversed, with directions to sustain defendant's motion to quash each count of the indictment.