STATE OF INDIANA *v.* BECKMAN.

[No. 27,571.   Filed November 25, 1941.]

178

George N. Beamer, Attorney General, John R. Walsh, Deputy Attorney General, and James O. Ballou, of Fort Wayne, for the State.

Chester L. Teeter, of Fort Wayne, for appellee.

SHAKE, C. J.—The appellee was charged with reckless homicide, under Acts of 1939, ch. 48, § 52, § 47-2001, Burns' 1940 Replacement, § 11189-62, Baldwin's Supp. 1939. He moved to quash the affidavit on the grounds that the facts stated therein did not constitute a public offense and that the affidavit did not state the offense charged with sufficient certainty. The court below sustained the motion, and the State has appealed.

The above statute provides that:

"Any person who drives a vehicle with reckless disregard for the safety of others and thereby causes the death of another person shall be guilty of the offense of reckless homicide."

The parties have briefed the case upon the theory that the language quoted is the only part of the statute which undertakes to define the offense of reckless homicide, but we do not find it so. The concluding part of the section is as follows:

"The offense of reckless driving, as defined in this section, may be based, depending upon the circumstances, on the following enumerated acts and also on other acts which are not here enumerated but are not excluded and may be within the definition of the offense: (1) driving at such an unreasonably high rate of speed, or at such an unreasonably low rate of speed, under the circumstances, as to endanger the safety or the property of others, or as to block the proper flow of traffic; (2) passing or attempting to pass another vehicle from the rear while on a slope or on a curve where vision ahead is obstructed for a distance of less than five hundred (500) feet ahead; (3) ·driving in and out of a line of traffic, except as permitted elsewhere in the laws of this state; (4) speeding up or refusing to give half of the roadway to a driver overtaking and desiring to pass; (5) failing to dim bright or blinding lights when meeting another vehicle or pedestrian; (6) driving recklessly against another person or against the car or other property of another; or driving in any other specified manner in

which the driver is heedless of probable injury to the safety, the property or the rights of others."

When all parts of the section from which the above quotations are taken are read and considered together, it clearly appears that some acts constituting reckless disregard for the safety of others are set out with sufficient certainty to meet the requirements of a valid statute defining a crime. For example, if the driver of a vehicle passes or attempts to pass another vehicle from the rear while on a slope or on a curve where vision ahead is obstructed for less than 500 feet and thereby causes the death of another person, he is guilty of reckless homicide. This definitely charges a public offense, for no uncertainty can exist in the mind of any reasonable person as to what the General Assembly intended to forbid in that regard. The same may be true of other acts specifically forbidden in the enumerating clauses of the statute, last above quoted, but it is unnecessary for us to pursue that inquiry further at this time. It is sufficient to say that we would not be justified in holding void all of that part of the act which undertakes to define reckless homicide.

The troublesome parts of the statute are the following clauses thereof: (1) "The offense of reckless driving, as defined in this section, may be based, depending upon the circumstances . . . on other acts which are not here enumerated but are not excluded and may be within the definition of the offense," and (2) "or driving in any other specified manner in which the driver is heedless of probable injury to the safety, the property or the rights of others." As to these clauses, the question arises whether they define a public offense with sufficient certainty, and that question is presented by the record in this case.

All public offenses in this state must be so described that the persons upon whom they operate may, with reasonable certainty, ascertain what the statute ██ requires or prohibits, so that they may know in advance whether that which they are about to do or fail to do is criminal or not. *Booth* v. *State* (1913), 179 Ind. 405, 100 N. E. 563, L. R. A. 1915 B 420, Ann. Cases 1915 D 987, affirmed by the Supreme Court of the United States in 1915, 237 U. S. 391, 59 L. Ed. 1011, 35 Sup. Ct. 617. This rule is subject to the qualification, however, that if an offense is declared by statute in the generic terms of the common law, without more particular definition, the courts will resort to the common law for the particular acts constituting the offense. *Glover* v. *State* (1913), 179 Ind. 459, 101 N. E. 629, 45 L. R. A. (N. S.) 473 It has likewise been held "that if the Legislature uses words having a common-law meaning or a meaning made definite by statutory definition or previous judicial construction, it may strike directly at the evil intended to be curbed, leaving it to the pleader to state facts bringing the case within the statutory definition and to the judicial department of government to interpret the application of the act to the facts stated." *People* v. *Green* (1938), 368 Ill. 242, 250, 13 N. E. (2d) 278, 282, 115 A. L. R. 348, 353.

It is clear that the statute does not fall in that class where the Legislature may be said to have bodily adopted the common-law definition of a crime, ██ such as sometimes results from the use of such terms as "arson," "adultery," "bigamy," "larceny," etc. But it does not follow that the phrase "reckless disregard for the safety of others" did not have a definite meaning at common law. It was said in *State* v. *Dorsey* (1889), 118 Ind. 167, 168, 169, 20 N. E. 777, 778, 10 Am. St. Rep. 111, 112, 113:·

"The common law definition of manslaughter, as given by Blackstone, is as follows: 'The unlawful killing of another without malice express or implied; which may be either voluntarily, upon a sudden heat; or involuntarily, but in the commission of some unlawful act.'

". . . To constitute manslaughter the act causing death must be of such a character as to show a wanton or reckless disregard of the rights and safety of others, but not necessarily an act denounced by the statute as a specific crime."

Our involuntary manslaughter statute follows the common-law definition of manslaughter, § 10-3405, Burns' 1933, § 2408, Baldwin's 1934. It will thus be seen that the statutory definition of reckless homicide is as specific in its descriptive terms as that defining involuntary manslaughter. Indeed, as a matter of statutory definition, the former is more certain than the latter, since "reckless disregard for the safety of others" is more restricted in its meaning than an "unlawful act," although the terms may be judicially interpreted as meaning the same things in particular statutes.

In *Smith* v. *State* (1917), 186 Ind. 252, 259, 115 N. E. 943, 946, the indictment charged that the defendant unlawfully drove a motor vehicle over a public street in a reckless and wanton manner, without regard for the safety of others, and at a high and reckless rate of speed. The court said:

"This count of the indictment charges appellant with gross carelessness in the operation of his automobile and is clearly sufficient under the rule that a negligent act which shows a wanton and reckless disregard for the rights and safety of others, and which causes the death of another, will constitute manslaughter."

In *Minardo* v. *State* (1933), 204 Ind. 422, 429, 430, 183 N. E. 548, 550, 551, the defendant was charged with having driven an automobile at a greater rate of speed

than was permitted by law, and also at a speed "greater than was reasonable and prudent having regard to the traffic and the use of said highway then and there existing, and which said rate of speed was then and there such as to endanger the life and limb of any person using said highway." The court said:

"In our opinion the charge is not limited to the alleged violation of the speed limit statute, but it especially covers the driving of an automobile under circumstances showing a willful and reckless disregard for the life and limb of other persons. The traffic on the road; the driving experience of appellant; whether or not the three seated in the car interfered with the driver's control thereof; the position of the car at the time of the collision with reference to the center of the road; the weight of the car, the condition of its brakes and the effectiveness of its headlights were evidentiary circumstances proper to be considered in determining the essential fact of whether or not appellant was guilty of wanton and reckless driving. . . ."

The case of *Armstrong* v. *Binzer* (1936), 102 Ind. App. 497, 504, 506, 507, 199 N. E. 863, 865, 867, involved the meaning of the words "reckless disregard of the rights of others," found in a statute relating to civil liability growing out of the operation of an automobile. The Appellate Court said:

"The statute does not attempt to define the meaning of the phrase 'reckless disregard of the rights of others,' but does, by such phrase, fix a standard of conduct which, if not observed, will result in liability for damages sustained, without, however, undertaking to apply that standard to any given state of facts, thus leaving the question as to what constitutes a reckless disregard of the rights of others open for determination as a question of fact when the evidence is conflicting, or when different inferences from the evidence may be reasonably drawn."

The following instruction was approved as a correct statement of the law:

" '. . . It is proper, therefore, for the court to define the term "reckless disregard of the rights of others."

" 'Reckless disregard of the rights of others, as used in the Indiana Guest Statute, means where the owner or operator of an automobile voluntarily does an improper or wrongful act, or with knowledge of existing conditions, voluntarily refrains from doing a proper and prudent act, under circumstances when his action, or his failure to act, evinces an entire abandonment of any care, and a heedless indifference to results which may follow, and he recklessly takes the chance of an accident happening without intent that an accident may occur.' "

There was a petition to transfer, based on the ground that the above opinion erroneously decided a new question of law, which this court denied prior to the enactment of chapter 48, Acts of 1939, and it is proper to presume that the General Assembly had that fact in mind when the statute here under consideration was enacted.

It is our view that the part of the statutory definition of reckless homicide which makes it unlawful to drive a motor vehicle with reckless disregard ■ for the safety of others is sufficiently definite to describe a public offense, and in this conclusion we are supported by the following cases from other jurisdictions: *State* v. *Schaeffer* (1917), 96 Ohio St. 215, 117 N. E. 220, L. R. A. 1918 B 945 Ann. Cas. 1918 E 1137; *People* v. *Green* (1938), 368 Ill. 242, 13 N. E. (2d) 278, 115 A. L. R. 348; *People* v. *Smith* (1939), 36 Cal. App. (2d) 748, 92 P. (2d) 1039; *People* v. *Gardner* (1939), 255 App. Div. 683, 8 N. Y. S. (2d) 917.

Involuntary manslaughter does not belong to that class of crimes that may be charged in the language of the statute. When the affidavit or indictment ▓ is based upon the commission of an act which is unlawful because it is negligent, the allegations must allege facts by which it is made to appear that the act was done wantonly or with reckless disregard for the safety of others, and it must further appear that such act was the proximate cause of the death. In *Potter* v. *State* (1904), 162 Ind. 213, 70 N. E. 129, 64 L. R. A. 942, 102 Am. St. Rep. 198, 1 Ann. Cas. 32, it was held to be necessary to a charge of manslaughter that the death of the decedent be made to appear the natural or necessary result of the unlawful act relied upon and that it was insufficient to charge that the killing occurred "while" the defendant was doing the unlawful act. The charge is not aided by the allegation, by way of conclusion, that the act was done with wanton and reckless disregard for the safety of others, *Kimmel* v. *State* (1926), 198 Ind. 444, 154 N. E. 16. The rules stated above must be held equally applicable to the charge of reckless homicide.

We now come to the sufficiency of the charge before us. It was, in substance, that on a day named, the appellee unlawfully and feloniously drove an ▓ automobile on a public highway, with reckless disregard for the safety of others, by operating said vehicle at a time when his vision was obscured by ice and frost on the windshield, caused by the fact that the radiator was leaking steam and water and the weather was freezing, and resulting in the appellee driving said automobile into and against another person on the highway, causing his death. The facts alleged in the affidavit do not bring the case within any of the six prohibitions contained in the concluding part of

§ 52, and if they sufficiently charge a public offense it must be because they constitute reckless disregard for the safety of others or heedlessness of probable injury to the safety, the property, or the rights of others as a matter of law.

The precise allegations with reference to the appellee's vision being obscured were that the ice and frost on the windshield did *"obscure* the vision of him, the said Walter F. Beckman, in driving and operating his automobile," and that he did not refrain from operating said automobile *"while* his vision was *obscured."* (Our italics.) The word "obscure" suggests inconspicuous to the sight, imperfectly illuminated, indistinct, clouded, shaded, or darkened. Anything on the windshield of an automobile, however slight, that in any way limits or restricts the ability of the driver to see through the same, may be said to obscure his vision to some degree, although it may not be sufficient to affect his driving or be the proximate cause of an accident that may occur. It was not alleged that the appellee's vision was obscured to the extent that he could not see the decedent, the highway, or where he was driving; nor was it directly charged that the decedent's death was proximately caused by the acts described.

We hold the affidavit bad for the second reason assigned in the motion to quash, namely, that it did not state the offense charged with sufficient certainty. In reaching that conclusion, we have not limited ourselves to the reasons assigned in the memorandum opinion of the court below, which is made a part of the record, or to the theories advanced in the briefs of the parties.

The judgment is affirmed.

NOTE.—Reported in 37 N. E. (2d) 531.