## TURRELL *v*. STATE OF INDIANA.

[No. 27,878. Filed November 22, 1943.]

*Chester L. Ducomb* and *George Sands,* both of South Bend, for appellant.

*James A. Emmert,* Attorney General, *Frank Hamilton,* First Assistant Attorney General, and *Frank E. Coughlin,* Deputy Attorney General, for the State.

RICHMAN, J.—Appellant was convicted on the second count of an affidavit drawn under § 52 of the Uniform Act Regulating Traffic on Highways, § 47-2001, Burns' 1940 Replacement, § 11189-62, Baldwin's Supp. 1939, defining the crime of reckless homicide and prescribing penalties.

Error is assigned on the overruling of appellant's motion to quash the affidavit. After charging the offense substantially in the language of the first sentence of the statute, namely, driving a vehicle with reckless disregard for the safety of others and thereby causing the death of another person, the affidavit continues with specifications of recklessness which, condensed, allege that the automobile was driven "at a rate of speed which was greater than was reasonable and prudent . . . to-wit: at a rate of speed of 89 miles per hour," and that appellant was so driving knowing that the brakes of the car were inadequate and in poor working order. It may not be reckless to drive at high

speed but so driving with knowledge that the car has defective and inadequate brakes is quite another matter. Here the two specifications are pleaded conjunctively. From the combination arises the inference of indifference to consequences "equivalent to criminal intent." See *Minardo* v. *State* (1932), 204 Ind. 422, 430, 183 N. E. 548, 551.

Relying upon *Kimmel* v. *State* (1926), 198 Ind. 444, 154 N. E. 16, appellant contends that additional facts should have been averred including "the condition of the weather, width of the highway, darkness or light, or nature of the district at point of occurrence." While there may be occasion for elaboration of such details in a case where a number of "concomitant circumstances" are relied upon to establish an offense under this statute, we think in this respect the affidavit was sufficiently specific. Appellant deems the affidavit defective because of the use of the phrase beginning with the word "while" and refers us to *dicta* on page 453 of the Kimmel opinion. The affidavit then under scrutiny is set out on page 446. The phrase "while so driving and operating his said motor vehicle" merely emphasized the continuity of the misconduct previously alleged and the resulting homicide. And this is true of a similar phrase in the affidavit in the case at bar. The fault in the Kimmel affidavit is that it states no facts as a basis for the conclusion that the accused was reckless and shows no such indifference to consequences as to manifest a criminal intent.

Appellant incorrectly assumes that subdivisions (c) (1) and (c) (6) of the statute are declared void for uncertainty by the opinion in *State* v. *Beckman* (1941), 219 Ind. 176, 37 N. E. (2d) 531. The gist of that decision is found on the last page of the opinion where it is held that the word "obscured" did not denote a total

obstruction of vision. If that affidavit had charged that the accused drove his automobile on a public highway with complete inability to see the highway or any object thereon in the path of his driving, in view of the other circumstances alleged in the affidavit, it would have been held sufficient to state an offense under this statute.

While it is true as indicated in the *Beckman* case that the reckless misconduct must be the proximate cause of the homicide, the affidavit need not characterize it as "proximate." Here it is averred that appellant drove his car at unreasonably high speed and with knowledge that it had inadequate brakes, and "then and there and *thereby*" drove it against and caused the death of the person named. It sufficiently appears that the combination of speed and known lack of adequate brakes constituted the recklessness causing the homicide. If other causes had been alleged it might have been necessary to tie them together by one effective allegation of causation or to choose the one relied upon and aver that it was the proximate cause. In the latter event the other allegations would be treated as surplusage in testing the legal sufficiency of the cause so chosen.

The affidavit alleges that the brakes of appellant's car "were not maintained in good working order and were inadequate to control the motion of and to stop and hold the movement of said automobile." This language was doubtless obtained from § 47-2228, Burns' 1940 Replacement, § 11189-157, Baldwin's Supp. 1939, prescribing a general standard of brake capacity for motor vehicles "when operated upon a highway." "Good working order" and "adequate" are relative terms. A brake adequate to "stop and hold" on a level road might be inadequate on a 15%

grade. Pleasure car brakes would be inadequate for heavy trucks. The brakes of a Model T Ford in "good working order" would not adequately stop and hold a Cadillac. The statute must be construed as requiring that brakes shall be in good working order and adequate for the particular type of vehicle in ordinary reasonable use on the highway. This is common sense. But it was not necessary that the affidavit use the statutory language, nor even that there be such a statute. The offense was not the violation of this section but of the section defining the offense of reckless homicide. That offense was stated in language "certain to a common intent" charging him with driving his automobile at an unreasonably high speed knowing that its brakes were insufficient to control movement even at reasonable speed under ordinary driving conditions. We think that this was recklessness within the meaning of the statute. The motion to quash was properly overruled.

In the trial of this cause no evidence was submitted in behalf of appellant. Most of the evidence was circumstantial. At the conclusion of the State's case appellant tendered an instruction of "Not guilty," which the court refused. In the motion for new trial he assigns error on this ruling. The same question is presented by the specification that the evidence is insufficient to sustain the verdict.

The only evidence as to defective condition of brakes was the testimony of three witnesses who examined the car in a garage to which it was towed after the collision. It was a Studebaker automobile with hydraulic brakes, the normal operation of which was described to the jury and is too well known to require elaboration in this opinion. Three mechanics examined the brakes in the garage. The first one assisted in towing it in and as soon as it arrived he tried the brakes by pushing

on the brake pedal twelve or thirteen times finding that there was "no brake at all." The others examined the car several days later, moving it for that purpose. Their inspection was similar to that of the first witness but they also stated that they looked under the car and found no evidence of leaking brake fluid as a result of their "pumping" the pedal. They did not testify as to inspecting the floor in the garage where the car had stood before it was moved. Nor did they examine the master cylinder or "take any wheels off or anything of that kind." The first witness testified that the car was in the same condition when it left as when it entered the garage. But there was an entire absence of testimony that the brakes when inspected by any of them were in the same condition as existed prior to the collision. The evidence shows that the automobile left the pavement, traveled 88 feet along the berm, and completely turned over landing on its wheels in a depression along the road. Photographs in evidence, taken immediately after the accident, showed serious body and fender damage on the right side of the car and a broken windshield. The force of the collision itself might reasonably explain an injury to the brake system permitting drainage of the brake fluid. There was no testimony as to how the car was "towed" from the scene of the accident to the garage. If a derrick was attached to the axle, the car could have tilted at an angle permitting such drainage.

The question is thus presented as to whether or not evidence of the condition of its hydraulic brake system after an automobile has been wrecked has any probative value as to its condition immediately before the wreck in the absence of evidence to prove that there had been no change in condition. A similar question often arises upon the admissibility of

evidence of conditions after the fact but here there was no objection to any of the testimony of the three mechanics. Dean Wigmore in § 437 of the 3rd edition of his work on Evidence discusses the principle that prior existence of a condition "is in human experience some indication of its probable persistence or continuance *at a later period.*" (His italics.) He then says:

"Similar considerations affect the use of subsequent existence as evidence of existence at the time in issue. Here the disturbing contingency is that some circumstance operating in the interval may have been the source of the subsequent existence, and the propriety of the inference will depend on the likelihood of such intervening circumstances having occurred and been the true origin."

He adds:

"That no fixed rule can be prescribed as to the time or the conditions within which a prior or subsequent existence is evidential, is sufficiently illustrated by the precedents, from which it is impossible (and rightly so) to draw a general rule. They may be roughly grouped into two classes,—those in which the evidence has been received without any preliminary showing as to the influential circumstances remaining the same in the interval (thus leaving it to the opponent to prove their change by way of explanation in rebuttal), and those in which such preliminary showing is required. Whether it should be required must depend entirely on the case in hand, and it is useless to look or to wish for any detailed rules."

We have examined the cases he cites, as well as many others, and have also concluded that "there is no fixed rule" for our guidance, certainly none established by Indiana cases. If there were a general rule, it might not apply to this case which involves a mechanism readily made inoperative by the force of a collision.

In the same section Dean Wigmore also states that

the opponent may "explain away the effect of evidence by showing that in the meantime other circumstances have occurred to raise a probability of change instead of continuancy." Here we have a defendant charged with crime and protected by constitutional provision against the necessity of explanation even to the extent that the State may not comment upon his failure to testify. It would seem therefore that the State as a prerequisite to the admission of such evidence should have shown the continuance of conditions. But since the testimony of the mechanics was admitted without objection, we must hold that it tended to prove only the brake condition when their examination was made and was entirely lacking in probative value as to inadequacy of brakes preceding the homicide. The essential connecting link in the chain of evidence is missing. In view of our conclusion it is immaterial whether or not there was evidence of unreasonably high speed. Both elements, speed and inadequate brakes, were essential to establish the crime charged in the affidavit. It follows that the court erred in refusing the peremptory instruction and the judgment must be reversed.

The affidavit may be amended prior to another trial, but in any state of the issues one question presented in the brief of appellant will doubtless again arise and that is the admissibility of the photographs, State's exhibits 2 and 3. These show views of the car immediately after the accident. Three boys were killed by appellant's car. The bodies of two of them are shown lying on the ground near the automobile at the place where it came to rest after it turned over. Objection was made on the ground that the photographs had no probative value but were of such a character that they would arouse the emotions, pas-

sions and prejudice of the jury. In the case of *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. (2d) 79, similar contention was made and the subject of admissibility of photographs calculated to have an emotional effect upon the jury was thoroughly considered. One of the cases upon which appellant relies, *Selleck* v. *Janesville* (1899), 104 Wis. 570, 80 N. W. 944, was there distinguished. The only other case cited by appellant is *O'Meara* v. *Haiden* (1928), 204 Cal. 354, 268 Pac. 334, where in an action for the death of the plaintiff's son his photograph was admitted in evidence over defendant's objection. The court said that the photograph had no probative value on the issue and that in a closely contested case its admission might have resulted in prejudice but held no such prejudice was shown even in the face of what seems to have been a bitterly fought case and the unusually large verdict of $10,000 for the death of a seven-year-old boy. The case is not persuasive. Here however the photographs had probative value, even disclosing some details on which there was no testimony by the witnesses. But if every fact they tended to prove had been covered by testimony nevertheless they were admissible under the rule announced in the *Hawkins* case.

Judgment reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 51 N. E. (2d) 359.