Commonwealth v. Goodman.

COMMONWEALTH *vs.* STEPHEN R. GOODMAN.

On a complaint under Gen. Sts. c. 86, § 34, for unlawful keeping of intoxicating liquor for sale, evidence of a chemical analysis of other beer called by the same name as beer kept for sale by the defendant, and similar in color, flavor and strength, is competent as tending to prove that the defendant's beer was of like quality in all respects to the beer analyzed.

The guilty intent needful to constitute an offence under Gen. Sts. c. 86, § 34, does not necessarily include a knowledge by the defendant of the intoxicating quality of liquor kept by him for sale.

COMPLAINT, under Gen. Sts. c. 86, § 34, for unlawfully keeping intoxicating liquor with intent unlawfully to sell it.

At the trial in the superior court, on appeal, before *Devens, J.,* it having been proved that a quantity of beer and implements of sale were found March 15, 1867, on the defendant's premises in Easthampton, by Timothy P. Lyman, a state deputy constable, and the defendant contending that this beer was not intoxicating, Lyman testified that it was similar, in color, flavor and strength, to certain other beer taken from the stock of one Prouty in Northampton, and that both were contained in barrels marked " Phelps' Hop Beer; " and that, on or about March 6, 1867, he furnished to the assistant of a state-assayer, for chemical analysis, a small bottle full of the beer taken from Prouty. This evidence was admitted against the defendant's objection. The assayer's assistant testified,'(the defendant objecting,) to an experimental analysis of this bottleful of beer, tending to show that it was intoxicating; and he stated that at the time of the analysis it seemed to have been bottled for a week or

more, and had begun to sour and was unfit to drink. Several saloon-keepers, called by the defendant, then testified that the beer kept by Prouty and by the defendant was the same in kind and strength with beer kept by themselves and was manufactured from similar ingredients by Phelps & Co. of New Haven, and that each barrelful was merchantable and fit for use only during from six to eight days after it was opened; and they further testified, together with several other witnesses, their customers, that this kind of beer was not intoxicating during that period. The assayer's assistant testified that this beer was strongest and had the largest proportion of alcohol before it began to sour, and became less and less intoxicating afterwards. There was other evidence, to the effect that it had more of alcohol at the second than at the first stage of fermentation, and that it underwent a second fermentation after becoming sour.

The defendant also offered evidence tending to prove that he received and sold this beer under an honest belief that it was manufactured expressly to be of such a mild and harmless quality as not to be prohibited under Gen. Sts. *c.* 86; and that " it was sold largely, publicly, and to private families, without animadversion from state constables;" and the defendant asked the judge to instruct the jury that if he had no intent to sell an intoxicating liquor or such as was in violation of law, he could not be convicted. The judge declined to give this instruction, and did instruct that if the defendant kept the liquor for sale, and it was actually intoxicating, although he believed that it was not so, the jury might find that he intended an illegal sale. The jury returned a verdict of guilty; and the defendant alleged exceptions.

*W. Allen, Jr.,* ( *C. Delano* with him,) for the defendant, as to the competency of the evidence of the analysis of Prouty's beer, cited *Collins* v. *Dorchester,* 6 Cush. 396; *Aldrich* v. *Pelham,* 1 Gray, 510; 1 Greenl. Ev. §§ 82, 84.

*C. Allen,* Attorney General, for the Commonwealth.

BIGELOW, C. J. We can entertain no doubt of the competency of the evidence of the chemical analysis of certain liquor which was introduced in support of the prosecution. It was not

testimony concerning a collateral fact which furnished no inference bearing on the issue. There was evidence of the identity of the kind or quality of this liquor with that which was found on the premises of the defendant. It was called by the same name and was similar in color, flavor and strength. This laid the groundwork for proof of the constituent parts of which it was composed in order to show that it was intoxicating in its nature, and as tending to lead to the inference that that which was in the possession of the defendant, bearing the same external appearance, was of like quality in all respects. In this view, it was competent circumstantial evidence. If on a trial for murder it appeared that the mortal wound was inflicted by a pistol discharged at a distance of thirty yards, it certainly would be competent to show that a pistol of the same size, shape and designation with one in the possession of the defendant would send a ball with deadly effect at that distance; or upon a charge of killing by poison, that a substance having the same name, color, odor and general appearance with one seen in the possession of the party charged was fatal to animal life. The point is not whether evidence of this character establishes the guilt of the party charged; but whether it is so far relevant and material as to be admissible as one link in the chain of circumstances tending to prove the issue before the jury. Tried by this test, the evidence objected to was clearly competent. It falls within what is called " the third basis of evidence" by a learned author, there being a clear connection between the collateral fact offered in evidence and the fact directly involved in the issue. 1 Greenl. Ev. § 11.

The ruling upon the other point raised at the trial was also correct. The offence with which the defendant is charged might have been committed irrespectively of any knowledge on his part that the liquors kept by him were intoxicating. The statute prohibits absolutely the keeping of such liquors with an intent to sell them. The intent applies solely to the purpose for which they are kept, and not at all to the nature or quality of the article. This a person is bound to know or ascertain at his peril. Whether he knows it or not, he commits the offence by keeping

an article which is in fact intoxicating, with an intent to sell it. The argument urged in behalf of the defendant is founded on the mistake that the guilty intent necessary to constitute the offence which the law prohibits must include a knowledge of the quality of the article as well as a purpose to sell it. Such a construction of the statute would contravene its whole scope and object. *Commonwealth* v. *Boynton*, 2 Allen, 160. *Commonwealth* v. *Farren*, 9 Allen, 489.    *Exceptions overruled.*