## DUNVILLE *v.* STATE OF INDIANA.

[No. 23,401.   Filed June 25, 1919.]

1. CRIMINAL LAW.— *Manslaughter.*— *Definition.*— *Common-Law Construction.*—Since §2239 Burns 1914, Acts 1905 p. 584, §351, defining manslaughter, was adopted bodily from the common law, the legislature must have intended to adopt the common-law meaning of the words used.   p. 375.

2. HOMICIDE.—*Manslaughter.*—*Wanton Recklessness.*—"*Unlawful Act.*"—*Proximate Cause.*—*Evidence.*—The words "unlawful act" contained in the statutory definition of manslaughter (§2239 Burns 1914, Acts 1905 p. 584, §351) are as broad in their content as they were at common law, and therefore include not only acts prohibited by statute but also conduct involving such wilfulness as to show a wanton recklessness as to the life and limb of others; but in either case, to support a conviction for manslaughter, the evidence must show that the unlawful act was the proximate cause of the death.   p. 375.

3. HOMICIDE.—*Manslaughter.*—*Wanton Recklessness.*—*Intent.*— Where one acts in violation of a statute under circumstances showing reckless disregard for the life and limb of others, and this violation is the proximate cause of the death of another, the law implies an intent to commit involuntary manslaughter. p. 375.

4. HOMICIDE.—*Manslaughter.*—*Proximate Cause.*—In a prosecution for manslaughter, based on a violation of the Motor Vehicle Act (§10476 Burns 1914, Acts 1913 p. 779, §16), evidence showing that the accused, while on a motorcycle, ran into and killed a two-year-old child, who suddenly started across the street and stopped in front of the motorcycle, but which failed to show that such violation was the proximate cause of the death and, when considered as a whole, showed at most only negligence on the part of the accused is insufficient to support a conviction.   p. 379.

From the Marion Criminal Court (46,374) ; *James A. Collins,* Judge.

Prosecution by the State of Indiana against James Dunville.   From a judgment of conviction, the defendant appeals.   *Reversed.*

*James M. Leathers,* for appellant.

*Ele Stansbury,* Attorney-General, and *Edward M. White,* for the state.

TOWNSEND, J.—Appellant was tried by the court, convicted of involuntary manslaughter and sentenced. The questions are presented by a motion for new trial: (1) finding not sustained by sufficient evidence; (2) finding contrary to law.

The indictment is in two counts, and it will be necessary to set out the substance only of so much of each count as will make understandable the questions discussed in this opinion.

The first count charges, in substance, that appellant drove a motorcycle north on Dearborn street, in the city of Indianapolis, at a speed in excess of twenty-five miles per hour, which was greater than was reasonable and prudent, having regard to the traffic and use of the street at the time and place; that this rate of speed was such as to endanger the life and limb of persons traveling on or using the street at the time and place; that as a result of this speed he lacked control of the motorcycle; that as a result of all of this he ran his motorcycle upon and against the person of Frances Held, inflicting injuries which caused her death on the following day.

So much of the substance of the second count as is necessary charges that he ran his motorcycle at a speed of thirty miles per hour on this street; that by reason of this speed he lacked control; that he operated his motorcycle without regard to the safety of other persons lawfully using said street; that as a result of his speed and lack of control he ran upon and against Frances Held, inflicting the injuries of which she died the following day.

The statute is: "Whoever unlawfully kills any human being without malice, express or implied, either volun-

tarily upon a sudden heat, or involuntarily, but in the commission of some unlawful act, is guilty of manslaughter, and on conviction, shall be imprisoned in the state prison not less than two years, nor more than twenty-one years." §2239 Burns 1914, Acts 1905 p. 584, §351. The above declaration of the crime of manslaughter is adopted bodily from the common-law definition. 4 Blackstone, Commentaries.

While it is true that all crimes in this state are statutory, yet the legislature, having adopted the common-law definition of manslaughter, must have intended to adopt the content of each and every word in the act as defined at common law.

1. 

Appellant is here charged with involuntary manslaughter. Each count of the indictment charges a violation of the Motor Vehicle Act as to speed.

2. §10476c Burns 1914, Acts 1913 p. 779, §16. The two words "unlawful act" contained in the statutory definition of involuntary manslaughter must

3. be taken to be as broad in their content as they were at common law. These words embody more than an act prohibited by positive statute. One may be guilty of involuntary manslaughter if he conducts himself, in a given set of circumstances, with such wilful disregard for the rights of others as to show a wanton recklessness as to the life and limb of other persons. It is also true that, if he is acting in violation of a positive statute under circumstances that show a reckless disregard for the life and limb of others, and this violation is the proximate cause of the death, the law then implies an intent to do the injury and makes him guilty of involuntary manslaughter. Whether the unlawful act committed is the one which we have first above indicated, or the second one pointed out, it is always necessary that the evidence show that the unlaw-

ful act is the proximate cause of the death. *People* v. *Barnes* (1914), 182 Mich. 179, 199, 148 N. W. 400.

The evidence in this case shows that Frances Held, the little girl who was killed, was two years and nine months old. The evidence shows that appellant on September 8, 1916, between 5:30 and 6 o'clock, was driving his motorcycle north on Dearborn street, in the city of Indianapolis; that he ran upon and against Frances Held in the block between Pratt and St. Clair streets. It is not definitely disclosed by the evidence where in the block this accident occurred, other than that the little girl came into the street opposite the Reynold's sidewalk. Witnesses testified to the speed of appellant at points not definitely disclosed by the evidence, but shown to be from a half block to 2½ blocks south from the scene of the accident. The evidence does not disclose anything as to the condition of the traffic on the street, or the length of block or blocks talked about by the witnesses. In fact, it affirmatively appears from the evidence, if anything, that the only person upon the street within that block was the little child, Frances Held; and the evidence shows that she ran suddenly across the street and stopped immediately in front of appellant's motorcycle; that he tried to avoid her; that he tripped his machine down, throwing his companion, who was on the rear seat, against the curb, rendering him unconscious; that this all occurred so suddenly that he did not have time to shut the engine off, and it drove the motorcycle, while resting upon its pedal, across the street and kept running until appellant went over and shut it off. One witness testified that the child, Frances Held, came from the west side of the street. It is not made to appear how far away appellant was when she came, or whether he was any appreciable distance south of where the accident occurred. Another witness testified that she came from the east side of

the street, but it is not made to appear how far appellant was away when she came, or what opportunity he had to see her. All the witnesses agree that the accident occurred near the east curb of the street at a point on the street where appellant had a right to be in going north. It is not shown how far away the witness was who testified that the child came from the west side of the street, nor is it made to appear that appellant had the same opportunity to see her, if she came from that side of the street, that this witness had. It is not shown how far the witness was away who testified that the child came from the east side of the street, nor is it made to appear that appellant had the opportunity to see the child that this witness had. There is not a syllable of evidence in the record as to the width of the street; no evidence as to whether the child came from a hidden position with reference to appellant. All of the witnesses who testified about the accident appear to have been south on the street anywhere from a half block to 2½ blocks—how far from the point of accident is not further disclosed. There is not a syllable of evidence in the record as to how long the block is where the accident occurred.

The testimony of the appellant is that he had just passed around a wagon which was standing on the east side of the street; that as he passed around this wagon he shut off the power on his motorcycle; that he was back to his position on the east side of the street, and had proceeded about 200 feet when he discovered immediately in front of him this child, who stopped right in front of his wheel. He says that he tried to avoid her but she stopped in front of his wheel. All of the witnesses agree that he tried to avoid her, but she ran suddenly into the street and stopped in front of his wheel. The testimony as to his speed at the south corner of this block and for two blocks farther south is rather re-

mote, considering the fact that nothing appears to show how far these points were from the scene of the accident. It is a matter of common knowledge that motor vehicles may be accelerated and retarded very rapidly. But whatever may be said as to the inferences that the lower court drew from the testimony about appellant's speed, and whether the lower court was warranted in drawing the inference that he was exceeding the speed limit of fifteen miles per hour at the time the child was struck, becomes material only when it is shown that the accident would not have occurred just as it did, had appellant been going at a lawful rate.

Counsel for the appellant, in a very able brief in which many authorities are collated, sets out the law of involuntary manslaughter. Counsel for the state admit that this exposition of the law is a correct one, but they wholly deny that the conduct of this child in suddenly coming into the street has anything to do with this case. Their contention is, if we understand them, that if it was shown that appellant was violating the speed law, and that, as some of the evidence shows, he was looking back, or looking to the side at some men who attracted his attention on the east side of the street, and for that reason did not see the child, that he is therefore guilty of manslaughter. Counsel for the state say that contributory negligence of the child has nothing to do with the case. This is true in a sense. It is not a question of contributory negligence. Of course, we know that a child two years and nine months old is not *sui juris* and cannot be guilty of negligence, or contributory negligence, in the ordinary sense of those terms; but the conduct of this child, in the circumstances shown by the evidence, is just as cogent in breaking down the intent which the law imputes to appellant after the event, as like conduct on the part of an adult in like circumstances would be in repelling such imputation. It

is not a question of contributory negligence, but it is one of proximate cause.

So the question is, Did appellant conduct himself at the time and place in such manner as to show a wilful and wanton disregard for the rights of others, from which the law infers an intent to cause death, and did his conduct cause the death? It will be conceded that, if appellant were driving his motorcycle down the street, and the facts showed that he saw, or had reason to know that little children were upon the street who were of such tender age as not to know the dangers or heed warning signals, it would be his duty so to conduct himself as not to injure them, and in the event that he wilfully and wantonly disregarded that duty and his conduct resulted in the death of one of them, he would be guilty of involuntary manslaughter. Circumstances could well be conceived in which he would be guilty of involuntary manslaughter if he drove the motor vehicle even at one mile an hour in a street crowded with little children—or even crowded with adults.

The most the evidence discloses is negligence on the part of appellant. For aught that appears in this case, the proximate cause of Frances Held's death was

4. the fact that she ran in front of appellant's motorcycle and suddenly stopped. For aught that is shown by the evidence, the accident would have occurred had appellant been proceeding in the most careful manner.

An apt authority involving most, if not all, of the salient principles here discussed is found in *People* v. *Barnes, supra.*

The finding of the court is not sustained by sufficient evidence, and is therefore contrary to law. The judgment is reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 123 N. E. 689.  Criminal law, adoption in relation to crimes, Ann. Cas. 1913E 1246, 21 Cyc 735.  See under (2) 21 Cyc 771.