C. A. Sheffield v. The State.

No. 15733. Delivered May 23, 1934.

The opinion states the case.

*Chas. C. Triplett* and *Walter F. Schenck,* both of Lubbock, for appellant.

*Lloyd W. Davidson,* States' Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of negligent homicide and his punishment fixed at a fine of $1500.

This case was once dismissed for lack of notice of appeal, and later affirmed because there was no statement of facts. It appearing that there was a statement of facts which had been mislaid, but is now before us,—and that the defects causing dismissal have been remedied, both former opinions will be withdrawn.

Appellant was charged with negligent homicide in two counts, one negligent homicide while engaged in an unlawful act, to-wit, driving a car on a public street in the city of Lubbock at a rate of speed exceeding 20 miles per hour, and the other negligent homicide by driving a car on a street of the city of Lubbock at such rate of speed and in a manner so careless as that said car was beyond control of the appellant,—it being charged in each count that appellant collided with Palima Kelley causing her death. Apparently throughout the trial the first count was regarded as charging negligent homicide in the second degree and the second as charging such homicide of the first degree. The verdict found appellant guilty under the first count and his punishment was fixed as above stated.

The facts show that Floyd Word with Palima Kelley were walking north on the west side of Avenue H in Lubbock going through an underpass. After emerging, they turned east to cross the avenue. At this point there was no street intersection and no regular crossing. Other than a small dock light at an ice factory some distance away, there were no lights near the underpass, the next nearest being a street light some hundred feet away at the corner of Fifth street, and another about two hundred feet distant at the corner of Fourth Street. As said couple started across the street, a car pulling a four wheel trailer was passing north. No lights were on the trailer and the car was moving very slowly and turned about the time that it was opposite them in a northeastern direction. Mr. Ward testified for the appellant that he was with Miss Kelley when she was struck by the car driven by the appellant. He said that they had passed the center of the street and stopped because a car pulling a trailer which was not running very good had had to stop for the trailer. According to his testimony they were possibly four or five feet from the trailer and about its center when it stopped. He further testified that at this time and under these circumstances he saw appellant some 10 or 12 feet back of the trailer,

start to come around same. We quote his testimony: "* * * When we first seen the car we thought he was trying to stay behind the trailer. When he saw he could not stay behind it, it looked like he was trying to come between us and the trailer."

He stated further that if he and his companion had stepped forward they would have been clear of appellant's car but they were blinded by the car and stepped back. This witness further testified that he thought appellant's car was going forty or fifty miles per hour but he could not be clear about it. Another State witness, who claimed to have seen the occurrence from the office of the ice factory above mentioned, stated that in his opinion appellant was going about 50 miles per hour.

Appellant testified that he was going about 20 miles per hour and was within five feet of the east side of Avenue H as he came up the incline from under the underpass, and was within fifteen feet of the trailer mentioned when he discovered it; that if same had had lights on it he would have seen it sooner. He testified that he pulled his car to the left to go around the trailer and that up to this time he had seen no one on the street; that Mr. Ward and Miss Kelley were on the other side of the trailer from him and not within the range of his lights. As he tried to pass the trailer, its left rear corner caught his right rear fender and he then saw Mr. Ward and Miss Kelley for the first time and that he was within five or six feet of them. He testified that he put on his brakes which were in good condition but that the parties stepped back. He said he swerved his car sharply to his left but struck them, he could not avoid hitting them. He also testified that he had no idea any one was at such place at the time or that there could be any danger of hitting anybody as he came up beside the trailer. The car and trailer according to his testimony were turning northeast as he came up so that he could see the east side of the trailer but could not see the west of it. He picked up Ward after the collision and went at once to the sanitarium. He affirmed that after he pulled around the trailer and saw these people there was no possible way of avoiding the collision; that had they not stepped backward he would have cleared them.

We state these matters for the very evident reason that in testing the sufficiency of the charge we must examine and weigh same in the light of the defensive theory in order to determine if the issues there raised have been fairly submitted. Many special charges were asked and numerous exceptions taken to the charge as given. As above stated, it was charged in the count under which conviction was had, that appellant was ope-

rating his car at a rate of speed exceeding twenty miles per hour, and while thus violating the law,—by negligence and carelessness, he collided with Palima Kelley causing her death, there being apparent danger of causing such death by so driving said car, which danger could have been known to the appellant if he had used that degree of caution which a man of ordinary prudence would have used under like circumstances.

In his charge to the jury the court told them that it was a violation of the laws of Texas for a person to operate a car upon the streets of an incorporated city at a rate of speed exceeding twenty miles per hour, and that one who in the performance of an unlawful act caused the death of another from carelessness and negligence, would be guilty of negligent homicide in the second degree; also that if they found from the evidence that this appellant about the time named did commit the offense of negligent homicide of the second degree as charged in the information, they should convict and assess the punishment stated, but if they did not so believe or had a reasonable doubt thereof they should acquit him. It was further charged that it was appellant's duty (1) to keep a proper lookout; (2) to keep his car at such rate of speed that it would at all times be under his reasonable control; (3) to exercise that degree of care and caution which a man of ordinary prudence would have used and exercised under like circumstances, and that his failure in regard to this duty would constitute negligence; also that the homicide was not a violation of the law unless the jury found beyond a reasonable doubt that same was the consequence of a negligent act of appellant. Again the court charged the jury that the homicide would not be a violation of the law unless there was an apparent danger of causing the death of Palima Kelley or some other person under the facts and circumstances of this case,—and that the term "apparent danger" meant a danger that was obvious, open, and easily discernible to a person of ordinary prudence situated as was this appellant at such time. The court also told the jury that it was conceded by the State that appellant had no apparent intention to kill Palima Kelley.

Appellant by special charge sought to have the jury told in effect that if Miss Kelley, just before she was struck by appellant's car, stepped backward toward the center of the street in front of appellant's approaching car, and by her act of so stepping backward she got in a position where striking her was unavoidable, or if they had a reasonable doubt of this, appellant would not be guilty as herein charged. We think some such af-

firmative defensive charge should have been given. Another special charge sought to have the jury told in effect that if Miss Kelley had proceeded to a point in said Avenue H where she was out of the sight of appellant as he approached and that he could not see her until he reached a point where he could not avoid a collision with her by the use of the means at hand, he should have been acquitted. We doubt the propriety of a charge in this language unless same had incorporated therein the further proposition that if Miss Kelley had proceeded to a point in Avenue H. where pedestrians were not reasonably expected to be, and at such time she could not be seen by one driving north toward her on the East side of said avenue until such driver was so near that by the use of reasonable means he could not have avoided a collision with her, then he should be acquitted.

In other words, we think it right and within the contemplation of this statute under which this prosecution was had that the question of proximate cause of death, under facts such as these, should be put before the jury for their decision. The principle is learnedly and convincingly argued out in the well considered cases of Dunville v. State of Indiana, 188 Ind., 373, and People v. Barnes, 182 Mich., 179, in the first of which a child appears to have been killed by a motorcyclist shown by some testimony to have been at the time exceeding the speed limit, and by other testimony it being shown that the child ran suddenly out from behind a wagon and tried to cross the street directly in front of the motorcycle. It was shown that the accused tried so hard to stop and avoid striking the child that he tripped his machine and threw a companion against the curb. The Supreme Court of Indiana said: "* * * It is a matter of common knowledge that motorcycles may be accelerated and retarded very rapidly. But whatever may be said as to the inferences that the lower court drew from the testimony about appellant's speed, and whether the lower court was warranted in drawing the inference that he was exceeding the speed limit of 15 miles per hour at the time the child was struck, becomes material only when it is shown that the accident would not have occurred just as it did had appellant been going at a lawful rate of speed. Counsel for the state says that contributory negligence of the child has nothing to do with the case. This is true in a sense. It is not a question of contributory negligence. Of couse, we know a child of two years and 9 months old is not sui juris and cannot be guilty of negligence or contributory negligence in the ordinary sense of those terms, but the conduct of this child, in the circumstances shown by the evidence, is just

as cogent in breaking down the intent which the law imputes to the appellant after the event, as like conduct on the part of an adult in like circumstances would be in repelling such imputation. It is not a question of contributory negligence but one of proximate cause. Circumstances could well be conceived in which one would be guilty of involuntary manslaughter if he drove the motor vehicle even at one mile an hour in a street crowded with little children or even crowded with adults. The most the evidence discloses is negligence on the part of the appellant. For aught that appears in this case, the proximate cause of Francis Held's death was the fact that she ran in front of appellant's motocycle and suddenly stopped. For aught that is shown by the evidence the accident would have occurred had appellant been proceeding in the most careful manner."

In the other case where a speed limit of 10 miles was involved and the accused claimed that he was within such limit and he sounded his horn as he approached deceased and a companion who were in the highway and deceased suddenly got in front of his car at a time when he could not stop same, the Supreme Court of Michigan said: " * * * Did the fact, if it be a fact, that respondent, at the time his automobile struck Mary Rob, was driving his automobile more than 10 miles an hour thereby cause her death? In other words, might not the death have occurred had the automobile been driven at 9 miles an hour? Did the unlawful rate of speed cause her death? We will split no hairs as to whether the unlawful act to warrant a conviction of manslaughter must be one that is malum in se, as distinguished from malum prohibitum. Eliminating the question of recklessness and gross carelessness from the case, would it be claimed here that, because respondent was by one mile per hour exceeding the legal speed limit he would be responsible for the death of the girl if in her excitement and confusion she jumped in front of the car at a time when it was physically impossible for the respondent to stop it before inflicting the injury? Did the mere fact that the car was being operated slightly in excess of the legal speed limit make the respondent guilty of manslaughter if a person wilfully threw himself in front of the car and received the injury? To ask these questions is to answer them in the negative. On the other hand, if this respondent were operating his car at the rate of 9 or 9½ miles an hour carelessly and negligently and should by reason of gross negligence run over a child sitting in the street, killing it, nobody would expect that he would be excused for his unlawful act. He could not claim that, because he was not violating the speed

limit, he was not guilty of wilful and gross misconduct in causing the death of the child. So we say here that the charge of the court eliminated all necessary connection between the speed of the car and the death of the girl. Not every degree of carelessness or negligence, if death ensues, renders the party guilty of manslaughter. The case may be one of mere misadventure. An unavoidable accident as crime is a contradiction. Whatever is unavoidable is no crime. As in the law of civil wrongs, so in the criminal, to render one answerable for an offense it must result from his act as an effect not too remote but sufficiently proximate thereto. To warrant a conviction of manslaughter the conduct of the accused must have been the proximate cause of the death, and must have been characterized by such a degree of culpable negligence as to amount to gross negligence and that is a question for the jury. The ultimate question for the jury to decide is: Was respondent criminally negligent, if so, did his criminal negligence cause the death of the deceased?"

The case before us is one which in its very nature would call for most careful consideration. A young woman was killed. She was killed by an automobile. Immediately the sympathies of a jury are arrested. Appellant proved a good reputation. He did not run away after the accident but stopped and rendered aid. The unfortunate occurrence was about 10 o'clock at night. The scene was not well lighted but the contrary. The victim was crossing the street apparently at a place where there was no pedestrian crossing, and no reason for a motorist to expect a person on foot to be crossing. The girl and her companion were held up and delayed in their crossing by a car with a trailer attached which, according to the testimony of the young lady's companion, had stopped just in front of them. Evidently the height of the trailer and its load was such as to prevent an approaching motorist from seeing people on the other side. Appellant testified that because there was no light on the trailer and it was going up an incline that he could not see it until quite near, and that as the trailer was turned northeast he could not see deceased or her companion who were on the other side of the trailer. None of this testimony is in dispute. It would seem natural for appellant to try and go around said trailer to continue his journey. In so doing this accident occurred. The young lady's companion as well as appellant seem to have testified that Ward and deceased stepped backward as the appellant's car came around the trailer. Appellant said as quick as he discovered them he put on his brakes and tried to avoid hitting them without success. It would be impossible for us to appraise

just what effect resulted from the fact that the left rear corner of the trailer struck appellant's right fender as he tried to pass. This may or may not have been due to appellant's negligence. He further testified positively that when he discovered the parties he pulled his car to the left and had they stood still they would not have been hit but they stepped backward and were struck by his fender and the young lady knocked under the car. If the acts of the young lady and her companion in being out in the street where there was no pedestrian crossing or if their act in moving backward just before the collision, either or both, made the collision one which could not have been avoided by appellant by the exercise of reasonable care, we think he would not be guilty and that such questions would be of fact to be submitted to the jury. We do not think what we have here said is in conflict with our opinion in Vasquez v. State, 52 S. W. (2d) 1056.

For the error of the court in failing to give the affirmative charge above mentioned and discussed, the judgment must be reversed and the cause remanded and it is so ordered.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.