No. 19,030.

MAX MOSKO, ET AL. *v.* BESSIE M. WALTON, ET AL.
AS B & M SERVICE CO.
(358 P. [2d] 49)

Decided December 12, 1960.    Rehearing denied January 16, 1961.

Messrs. Mosko & Slatkin, Mr. C. B. Marmaduke, for plaintiffs in error Max Mosko and Lillian Meltz Mosko.

Messrs. Robinson & Curran, for plaintiff in error Nick Huber.

Mr. E. B. Evans, Mr. Martin A. Kane, for defendants in error.

*In Department.*

Opinion by Mr. Chief Justice Sutton.

The parties appear in inverse order to their appearance in the trial court and will be referred to as they there appeared or by name.

Plaintiffs were awarded $20,000.00 for damage to their property located in Rangely, Colorado, alleged to have been caused by defendants' negligence in the continued use of a leaking water pipe. They contended that water leaking from the pipe in question had flooded the subsurface strata and caused their building to settle and its walls to crack to such an extent that it became dangerous and unfit for further use or occupancy, and that the defendants were liable for their loss.

One question of substance is presented and its determination is dispositive of the case, viz, is there sufficient evidence in the record to prove that negligence of defendants was a proximate cause of the damages to plaintiffs' building?

The defective water pipe is located under property which adjoins plaintiffs' land to the east, formerly owned by others, then by defendant Mosko, then resold, reacquired by Mosko and later acquired by defendant Huber. It is hereinafter referred to as the Mosko-Huber property. The chronology of ownership is important, and is hereafter set forth in greater detail.

In 1946 plaintiffs purchased their property. In 1948 the then owner of the Mosko-Huber property put in the pipeline in question, a ¾-inch black pipe which connected to the town water main. The pipeline was laid in a north-south direction, parallel to the boundary line between the two tracts of land in question, and just east of the plaintiffs' property line.

In the fall of 1948 the plaintiffs' structure was erected. It was a one-story commercial building, built out of concrete blocks and was added to in subsequent years.

Mosko first acquired title to the Mosko-Huber property in 1950. Later, in June of 1951, he sold it to Bryant and Melba Sisco, eventually taking a deed of trust as security for the unpaid balance of the purchase price. The Siscos remained in possession of the property until 1954 when they became unable to pay monthly installments. On August 6, 1954, they reconveyed the property to one Knight for the use of Mosko. The property was vacant from the time the Siscos left in the fall of 1954 until December of that year, at which time Huber took possession under a one-year oral lease with Mosko. In October of 1955 title was conveyed to Huber, who was the record owner at the time of trial.

Sometime in 1954, *while the Siscos were the owners and in possession of the property,* it became obvious from dampness on the ground above the pipeline, that it was leaking. At that time the plaintiffs' property was connected to and using the line in question. They disconnected from it, re-connecting two or three weeks later to a line in the rear of their property. At the same time a crack appeared in the east wall of plaintiffs'

building. Mr. Sisco excavated to the pipeline, found a leak, and repaired it. At this time the plaintiffs dug under part of their building and placed some supports there in an attempt to stop its settling. When the Siscos vacated their property the water was shut off in the pipeline at the water main. It was turned on again by Huber when he went in possession of the property three months later. In March or April of 1956 an attempt was again made to excavate the pipeline to repair its leaking, which had continued after Sisco's earlier repairs, but water filling the excavation caused this project to be abandoned. Soon thereafter water to the pipeline was permanently shut off and other facilities were installed.

There is some evidence that the soil in question would disintegrate when soaked and it is undisputed that the subsurface strata, at least in this area, is of an unstable nature and subject to shifting and settling when wet. It is beyond dispute that water in the subsurface strata was responsible for the damage to plaintiffs' building. It was necessary for plaintiffs, however, to establish that the damage was caused by the defendants' negligence in continuing to use a pipeline that was known to be leaking. Defendants urge that plaintiffs have not adequately proved this fact, a conclusion with which we are forced to agree.

While the record is replete with testimony which if believed could serve to prove that the pipeline in question was in fact leaking at the times indicated, and that the owners of the property under which the line was installed knew of the leak and knew of the contention of plaintiffs that it was damaging their building, there is a lack of competent evidence in the record to connect the leak in question with the damage to the property. The record abounds with testimony offered on behalf of defendants that there were many other sources of water accumulation in the area, and that water from these sources did in fact so accumulate. For example, surface drainage waters ran between the two properties

on occasion; plaintiffs shoveled snow off their large roof onto the defendants' property; another time a pool of water gathered on the surface above the two properties and there was evidence plaintiffs washed cars in the immediate area. Also there is evidence that other buildings in the community, some distance from this pipeline and of similar construction, suffered from a similar cracking of the walls.

■ We can indeed sympathize with the difficulties of counsel in attempting to adduce sufficient proof to establish the causal connection in subsurface subsidence cases such as the one at bar. While we agree that the state of the record is sufficient to establish a possible connection between the leaking pipeline and the damage to plaintiffs' building, we cannot affirm a judgment based upon mere possibilities, conjecture or speculation. We have searched the record in vain for evidence tending to correlate the period of cracking with the time the leak was known to have occurred. There is evidence that no cracking occurred from the time the building was built in 1948 until 1954. Beyond this there is nothing to actually connect the cracking with the period that defendants were in possession of the property, or while they were the owners thereof, at least with any degree of exactness. At most the testimony is that after the cracking started the walls "kept cracking larger and larger until there was a complete hole through the side of the building."

There is nothing in the record to correlate the amount of damage that occurred with the time that any individual defendant was the owner or in possession of the property, or when it was owned by Mosko and leased to Huber before a sale was consummated. The evidence would indicate that at least the initial cracking occurred when the Siscos, who are not parties to the action, were the owners and in possession of the property, but there is nothing in the record to clearly delineate the extent of the damage during this period or whether such dam-

ages were repaired after the Siscos left the premises. It is not even clear whether the initial cracking ceased or abated during the three-month period when the water was turned off after the Siscos left the property. Nor was it shown that the leak did not arise from the plaintiffs' own connection to and use of the same water line during a part of the period.

The record is equally devoid of evidence that the settling and cracking ceased or abated when the use of the leaking pipe was permanently discontinued. To the contrary, one of the plaintiffs testified that the building was "still settling" on the date of the trial, and no effort was made to produce a scientific explanation of how this continued settling could be attributed to defendants' negligence.

■ Viewing the state of the record as a whole in the light most favorable to plaintiffs, we must hold that the evidence of negligence of all or any one of defendants being the proximate cause of the damages is insufficient to remove it from the field of conjecture and speculation so as to provide a basis upon which inferences might reasonably be drawn. "There must at least be sufficient evidence to remove the question from the realm of conjecture." *Polz v. Donnelly* (1949), 121 Colo. 95, 98, 213 P. (2d) 385.

■ The state of the evidence here is that the water line was negligently maintained but that no adequate showing was made of a causal connection between such negligence and plaintiffs' damages. It could just as well be assumed that the soil had deteriorated and the damage began earlier, or when plaintiffs were using the line, or that it was due to the other sources of moisture mentioned, as to infer that it resulted from the use for certain periods of time of a leaking line by Huber or while Mosko owned the land. It is clear the cracking started while neither defendant owned or was in possession of the Huber land. To hold them liable without a reasonable showing that their negligence contributed to the

plaintiffs' loss is contrary to law. See *Magnolia Petroleum Co. v. Williams* (1954), 222 Miss. 538, 76 S. (2d) 365. Their negligent act or omission must have been such that without it the injury would not have occurred. See 65 C.J.S. 655, Sec. 106. The rule of proximate cause requires proof that but for the defendants' negligence the damage would not have occurred. *Stout v. Denver Park and Amusement Co.* 1930), 87 Colo. 294, 287 Pac. 650. Where the evidence, as here, presents no more than an equal choice of probabilities, it is not substantial. *Polz,* supra. "No number of mere possibilities will establish a probability." *U.S.F. & G. Co. v. Ind. Com.* (1950), 122 Colo. 31, 219 P. (2d) 315.

▇ And where, as here, defendants show that it is as likely that the injury occurred from one cause as another, and that the defendants are not responsible for one cause, the burden of establishing proximate cause has not been fulfilled. See 65 C.J.S. 1195, Sec. 265.

The judgment is reversed.

MR. JUSTICE HALL and MR. JUSTICE FRANTZ concur.