DONALD D. COFFELT *v.* STATE OF INDIANA.

[No. 3-573A51. Filed March 7, 1974.]

486

*Howard S. Grimm, Jr., Grimm & Grimm,* of Auburn, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert A. Zaban,* Deputy Attorney General, for appellee.

STATON, J.—Donald D. Coffelt was tried by court and convicted of involuntary manslaughter on September 28, 1972.[1] He was sentenced to the Indiana Department of Corrections for a period of not less than one [1] year nor more than ten [10] years. Coffelt timely filed his motion to correct errors which raises only one issue on appeal: sufficiency of the evidence to sustain his conviction.

When reviewing the sufficiency of the evidence, this Court cannot weigh the evidence nor determine the credibility of the witnesses. *Walker* v. *State* (1973), 155 Ind. App. 404, 293 N.E.2d 35; *Smith* v. *State* (1970), 254 Ind. 401, 260 N.E.2d 558. We will consider only that evidence most favorable to the State with all reasonable inferences which may be drawn therefrom. The conviction will be affirmed if, from that point of view, there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Taylor* v. *State* (1972), 259 Ind. 25, 284

1. Involuntary manslaughter is defined in IC 35-13-4-2; Ind. Ann. Stat. § 10-3405 (Burns 1973 Supp.) as follows:
"Involuntary Manslaughter. Whoever kills any human being without malice, expressed or implied, involuntarily but in the commission of some unlawful act, is guilty of involuntary manslaughter, . . ."

N.E.2d 775; *Rogers* v. *State* (1972), 154 Ind. App. 445, 290 N.E.2d 135.

Coffelt first contends that there is insufficient evidence to show that he was engaged in an unlawful act. The grand jury indictment of February 8, 1972 charged that Donald Coffelt committed involuntary manslaughter while engaged in an illegal speed contest.[2] IC 9-4-6-1 (Burns 1973) defines a speed contest as follows:

> "Speed contest defined.—Under this act [9-4-6-1—9-4-6-4], a speed contest is any unnecessary rapid acceleration by two [2] or more vehicles which creates a hazard to pedestrians, passengers, vehicles or other property."

Reviewing the evidence most favorable to the State, the record discloses the following. On November 6, 1971 at approximately 9:00 o'clock P.M. at the intersection of State Road 14 and Getz Road near Fort Wayne, Indiana, a 1968 Corvette automobile driven by Donald D. Coffelt collided with the right side of a 1971 Toronado automobile driven by Mrs. Carol Knotts. As a result of the collision, the four minor passengers in the Toronado and the adult passenger in the Corvette were killed. Mrs. Knotts had been on her way to a filling station at the corner of State Road 14 and Getz Road to pick up her husband. State Road 14 is a four lane highway with a dip in the road west of the Getz Road intersection. Before turning left onto Getz Road, Mrs. Knotts slowed her automobile and noted headlights approximately one-half mile away. She had completed her turn but was still in the intersection when the Corvette hit her. Mrs. Knotts described the collision as follows:

> "A. . . . I was in the eastbound traffic lane. And as I was in the middle of that lane, I saw another set of headlights and he just, he just came out of nowhere, and I didn't have time to be frightened or anything. I just stepped on the gas hoping to get out of the way and

---

2. IC 9-4-6-2 (Burns 1973) provides:
"Speed contest on street or highway illegal.—It shall be unlawful for any person to engage in any motor vehicle speed contest on any public highway or public street."

that's the last thing I remember until Mort [her husband] came running over to the car. . . .

\* \* \*

"A. They [the Corvette headlights] were coming very fast because they just appeared—just appeared out of nowhere, they just appeared, and then they hit me. . . ."

Prior to the collision, several witnesses testified that they saw Donald Coffelt and David Reinoehl racing each other. David Reinoehl was driving a 1969 GTO. One of the witnesses, Mr. Tony Mentzer, was traveling between 70 and 75 m.p.h. on Interstate 69 when he first noticed the two cars racing:

"A. This GTO went flying around me and this Corvette was right behind him.

\* \* \*

"A. Well, I watched them the best I could. As I went on down 69 I could tell, in my own opinion, that they were racing. So I went on and watched them. I watched when they would come up on a car that was on up the road in front of me and in front of this Corvette, the GTO was in the passing lane; the Corvette, if I remember right, could, uh, put on his brakes to slow down and cut back into the passing lane, passed this car, then right back in to the driving lane again."

Mrs. Mentzer, who was riding with her husband that night, also observed the two cars racing. Both Mr. and Mrs. Mentzer testified that after the two cars exited onto State Road 14, they observed them take off side by side on the State Road 14 overpass, approximately one-half mile from the scene of the collision. David Reinoehl testified that he had been racing a 1968 Corvette on Interstate 69 and described what occurred on State Road 14 as follows:

"A. . . . [W]hen we got on top of the bridge, he come to an almost complete stop and I said something to Steve [Steve Shumaker, passenger] about 'what's going on here' or something, and so I just was going to pass him. I didn't know whether he was going to stop on the road or what he was doing for sure.

"Q. Did you swing out into the left then?

"A. Yes. Then I went into the left lane and when I got beside him he was probably going 15 maybe and he kicked his vehicle so I kicked mine too.

* * *

"A. Well at one time on 14, we were going at least 95 to 100. . . .

"Q. Now, the stretch of road from the bridge to Getz Road is not very far, is it?

"A. No, it isn't?

"Q. And in that period you attained that speed, is that correct, that you've just referred to?

"A. Yes, sir."

Finally, Mr. Steve Shumaker, a passenger in the GTO, testified that the GTO was racing the Corvette on State Road 14 and estimated the cars were going 80 to 90 miles per hour going into the dip.

The testimony of the witnesses related above is substantial evidence of probative value from which the trial court could reasonably infer that Donald Coffelt was engaged in an illegal speed contest at the time of the collision.

Coffelt secondly contends that there is insufficient evidence to show that his engaging in a speed contest as charged in the indictment was the proximate cause of the deaths that resulted from the collision on November 6, 1971. Coffelt maintains that "the action of Mrs. Knotts in turning in front of him was more nearly the proximate cause of the accident than his speed." It is true that to uphold a conviction of involuntary manslaughter, it is necessary that the evidence show that the unlawful act is the proximate cause of the death or deaths in this case. *Howell* v. *State* (1928), 200 Ind. 345, 163 N.E. 492; *Dunville* v. *State* (1919), 188 Ind. 373, 123 N.E. 689. In discussing proximate causation in involuntary manslaughter cases, the Indiana decisions have consistently required a direct causal connection between the unlawful act committed by the defendant and the death of the decedent.[3] As stated by the Indiana Supreme Court in *Votre* v. *State* (1923), 192 Ind. 684, 686, 138 N.E. 257:

3.  For jurisdictions which have expressly rejected applying tort proximate cause principles to a homicide see: *Commonwealth* v. *Root* (1961), 403 Pa. 571, 170 A.2d 310; *People* v. *Scott* (1971), 29 Mich. App. 549, 185 N.W.2d 576.

"To constitute the crime of manslaughter, there must be such legal relation between the commission of the unlawful act and the homicide that it logically follows that the homicide occurred as a concomitant part of the perpetration of, or in furtherance of an attempt to commit, the unlawful act. Therefore it follows that death must be the natural result and the probable consequence of the commission of the unlawful act upon which the homicide is based. . . ." See also *Kimmel* v. *State* (1926), 198 Ind. 444, 154 N.E. 16.

Contributory negligence of the deceased is not a defense to an involuntary manslaughter charge but will exonerate the defendant if the deceased's negligence was the sole cause of his own death. For example in *Howell* v. *State, supra,* where a nine year old child darted in front of defendant's speeding car, the Supreme Court of Indiana reversed on the grounds that the decedent's act, not the defendant's, was the direct cause of death. See also *Dunville* v. *State, supra.* The question of the direct cause of the collision and the resulting deaths in this case is properly one for the trier of fact. *Kraft* v. *State* (1930), 202 Ind. 44, 171 N.E. 1. The only question before this Court on appeal is whether there is substantial evidence of probative value from which the trier of fact could reasonably infer that the deaths resulting from the collision on November 6, 1971 resulted from Donald Coffelt's participation in a speed contest.

The evidence shows that Donald Coffelt's engaging in a speed contest at 100 m.p.h., rather than Mrs. Knotts' turning onto Getz Road, was the direct cause of the collision. Mrs. Knotts testified that it was a clear night and that she slowed down at the Getz Road intersection ". . . to make sure there was no oncoming traffic." Seeing only the headlights of another car approximately one-half mile away, she felt that she had ample time to turn and while in the middle of that turn, the headlights of the Corvette ". . . just appeared out of nowhere. . . ." Steve Shumaker, the passenger in the GTO automobile, testified that at the speed the two racing cars were traveling there was no opportunity to avoid the collision.

Officer Lloyd W. Oswald of the Allen County Police Department testified that from the damage to the automobiles and from the existing debris scattered over a wide area, he felt there had been a high speed collision.

From a careful examination of the six hundred page transcript in this case, we find sufficient evidence of probative value to support a finding of the trial court that the excessive speed of Donald Coffelt while engaging in a speed contest was the direct cause of the collision on November 6, 1971 which resulted in the deaths of four children and one adult.

The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, C.J. and Garrard, J., concur.

NOTE.—Reported at 307 N.E.2d 497.