The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Gregory Scott ROSTAD,
Defendant-Appellee.

No. 82SA31.

Supreme Court of Colorado,
En Banc.

Sept. 6, 1983.
Rehearing Denied Sept. 26, 1983.

Robert L. Russel, Dist. Atty., Robert B. Harward, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Richard Tegtmeier, Colorado Springs, for defendant-appellee.

KIRSHBAUM, Justice.

The People appeal the trial court's judgment declaring Colorado's vehicular homicide and vehicular assault statutes unconstitutional. We reverse.

Defendant, Gregory Scott Rostad, was charged with violations of sections 18–3–106(1)(b)(I) and 18–3–205(1)(b)(I), C.R.S. 1973 (1978 Repl.Vol. 8) (1982 Cum.Supp.).[1] These statutes state as follows:

"If a person operates or drives a motor vehicle while under the influence of any drug .or intoxicant and such conduct is the proximate cause of the death of another, he commits vehicular homicide. This is a strict liability crime." Section 18–3–106(1)(b)(I).

. . . .

"If a person operates or drives a motor vehicle while under the influence of any drug or intoxicant and this conduct is the proximate cause of a serious bodily injury to another, he commits vehicular assault. This is a strict liability crime." Section 18–3–205(1)(b)(I).

Prior to trial defendant moved to dismiss the vehicular homicide charge on the grounds that section 18–3–106 is unconstitutionally vague and violates equal protection guarantees of the federal and Colorado constitutions. The trial court concluded that the references in that statute to proximate cause and to strict liability create unascertainable and therefore impermissibly vague standards, in violation of constitutional guarantees of due process and equal protection of the law.[2] The trial court also declared both statutes unconstitutional "because they deny the accused the opportunity to rebut the presumption raised by his or her blood alcohol content. . . ." We disagree with these conclusions.

## I.

The concept of fundamental fairness inherent in the due process clause of the Fourteenth Amendment to the federal constitution and Article II, Section 25 of the Colorado Constitution requires that legislation must be drafted in language sufficiently precise and clear to provide persons of ordinary intelligence with fair notice of what conduct has been determined to be unlawful. *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *People v. Boyd,* 642 P.2d 1 (Colo. 1982); *People v. Beruman,* 638 P.2d 789 (Colo.1982). Statutes are presumed constitutional, however, and a party asserting the unconstitutionality of a statute has the burden of proving such claim beyond a reasonable doubt. *People v. Caponey,* 647 P.2d 668 (Colo.1982); *Bollier v. People,* 635 P.2d 543 (Colo.1981). When a statute is challenged on grounds of vagueness, courts will attempt to construe the legislation in a manner which will satisfy constitutional due process requirements, if reasonable and practicable construction of the statute will achieve such result. *People v. Beruman,*

1. Defendant was initially charged with two additional offenses—reckless driving, § 42–4–1203(1), C.R.S.1973 (1982 Cum.Supp.), and driving under the influence, §§ 42–4–1202(1)(a) and (1)(c), C.R.S.1973 (1982 Cum.Supp.). At the request of the People, both of these charges were dismissed.

2. Although defendant's motion addressed only the constitutionality of § 18–3–106(1)(b)(I), the trial court's final order dismissed both count I (vehicular homicide) and count II (vehicular assault). The order erroneously referred to the "vehicular assault" charge as being "embodied in C.R.S.1973, 42–4–1203(1)." Both parties have assumed that the vehicular assault statute found unconstitutional by the trial court is § 18–3–205(1)(b)(I)—the statute cited in the information as the basis for count II. The context of the trial court's opinion indicates that this assumption is accurate.

*supra; R & F Enterprises, Inc. v. Board of County Commissioners,* 199 Colo. 137, 606 P.2d 64 (1980).

■ It is true, as defendant argues, that the term "proximate cause" has been the subject of protracted debate and a source of great confusion in the law of torts. *See, e.g.,* Annot., 100 A.L.R.2d 942 (1965). However, many other technical terms peculiar to the law, such as "hearsay evidence" and "res gestae," have also been the object of extensive judicial interpretation. Analytical difficulty cannot be deemed synonymous with constitutional vagueness.

Historically, courts have developed explanatory definitions of the term proximate cause in the context of civil litigation which, for all their difficulties, have in practice been found adequate to advise fact finders of the distinct type of causal connection required between conduct and injury to permit determination of liability in civil actions. *See Mosko v. Walton,* 144 Colo. 602, 358 P.2d 49 (1960); *Stout v. Denver Park & Amusement Co.,* 87 Colo. 294, 287 P. 650 (1930). In the criminal law, the gist of the concept is the not-so-complex principle that persons normally should be deemed responsible for the natural and probable consequences of their acts. *Hamrick v. People,* 624 P.2d 1320 (Colo.1981). The principle serves an evidentiary function, requiring proof by the prosecution of the causal relationship between the defendant's conduct and the result. Thus, contrary to defendant's argument, proof of proximate cause does not require a finding of some undefinable mental state of the actor; rather, proximate cause is determined by an objective standard, and the actor's particular state of mind is not relevant to this issue. *See* 1 R. Anderson, *Wharton's Criminal Law and Procedure* § 195 (1957).

Several other jurisdictions have approved legislation which provides that an operator of a motor vehicle cannot be convicted of homicide related to the use of such vehicle in the absence of proof that the operator's conduct proximately caused the victim's death. *See, e.g., State v. Benson,* 5 Conn.

Cir. 316, 251 A.2d 185 (1968); *Coffelt v. State,* 159 Ind.App. 485, 307 N.E.2d 497 (1974); *State v. McFadden,* 320 N.W.2d 608 (Iowa 1982); *State v. Vaught,* 56 Ohio St.2d 93, 382 N.E.2d 213 (1978); *State v. Dionne,* 442 A.2d 876 (R.I.1982). *See also* 3 R. Anderson, *Wharton's Criminal Law and Procedure* § 985 (1957). Indeed, this court implicitly has recognized that the doctrine of proximate cause is not an inappropriate concept in the context of legislation defining criminal conduct. *People v. Fite,* 627 P.2d 761 (Colo.1981); *Hamrick v. People, supra; People v. Palumbo,* 192 Colo. 7, 555 P.2d 521 (1976); *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975). The decision by the General Assembly to require proof of proximate cause in criminal proceedings relating to the operation of a motor vehicle represents a rational choice among many public policy alternatives. We conclude that the phrase "proximate cause" is sufficiently intelligible to satisfy both federal and Colorado constitutional standards of due process of law.

## II.

■ The concept of strict liability is one by-product of the trend toward the adoption by state and federal legislative bodies of comprehensive codes defining "criminal" conduct. The policies underlying this concept directly conflict with one of the most enduring common law principles of criminal jurisprudence—the concept that in general a person may not be subjected to severe penal sanctions unless the act in question is accompanied by a state of mind reflecting some degree of awareness that such conduct is prohibited. *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *Dennis v. United States,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). Nevertheless, it has long been recognized that, subject to constitutional limits, legislation may punish conduct alone. *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); *United States v. Wiesenfeld Warehouse Co.,* 376 U.S. 86, 84 S.Ct. 559, 11 L.Ed.2d 536 (1964); *Smith v. California,* 361 U.S. 147, 80 S.Ct.

215, 4 L.Ed.2d 205 (1959); *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). In this nation, such "strict liability" crimes began to appear in the middle of the nineteenth century, initially in the context of regulatory legislation designed to control the availability of particular products such as food[3] and liquor.[4] *See* Sayre, *Public Welfare Offenses,* 33 Colum. L.Rev. 55 (1933).

As the concept of criminal responsibility without "fault" has gained in popularity, the list of subject areas addressed by legislation designed to punish conduct alone has multiplied. *See, e.g.,* Comment, *Liability Without Fault: Logic and Potential of a Developing Concept,* 1970 Wis.L.Rev. 1201. Efforts to delineate constitutional limitations which might restrict the range of legislative choice in creating crimes of conduct alone require consideration of often conflicting definitions of fundamental principles of criminal law.

Before embarking upon such uncertain paths, however, courts must determine to what extent, if any, particular legislation has in fact established penal sanctions for conduct alone. We conclude that the two statutes here challenged require proof of an actor's state of mind as well as proof of prohibited conduct.

Both section 18–3–106(1)(b)(I) and section 18–3–205(1)(b)(I) are stated to be offenses of "strict liability." Contrary to defendant's basic assumption, however, a "strict liability" offense in Colorado is not characterized by the absence of any mental state. In section 18–1–502, C.R.S.1973 (1978 Repl. Vol. 8), the General Assembly has defined the principle of strict liability in relation to the general requirements for criminal liability which underlie the entire criminal code. The statute states in pertinent part as follows:

"The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he

is physically capable of performing. If that conduct is all that is required for commission of a particular offense ... the offense is one of 'strict liability'."

A "voluntary act" is "an act performed consciously as a result of effort or determination, and includes the possession of property if the actor was aware of his physical possession or control thereof for a sufficient period to have been able to terminate it." Section 18–1–501(9), C.R.S.1973 (1978 Repl. Vol. 8). Thus, the minimal requirement for a "strict liability" offense is proof that the proscribed conduct was performed voluntarily—*i.e.,* that such act must be the product of conscious mental activity involving effort or determination. Although this mental state of voluntariness is not defined as a "culpable mental state" for purpose of the criminal code, the General Assembly has in reality defined "strict liability" offenses to require proof of some minimal amount of conscious mental activity by the accused.

Section 18–3–106(1)(b)(I) contains the following material elements:

(1) The operating or driving of a motor vehicle;

(2) being under the influence of any drug or intoxicant at the time; and

(3) the death of another is proximately caused by such conduct.

Section 18–3–205(1)(b)(I) contains the same material elements, except that "serious bodily injury" rather than "death" must be established.

We conclude that the General Assembly has not ignored the fact that operating or driving a motor vehicle requires conscious mental activity in establishing the offenses of causing injury or death by driving a motor vehicle while under the influence of a drug or an intoxicant. The prosecution must prove voluntary conduct, as defined by section 18–1–501(9), in the operation or driving of a motor vehicle to secure a con-

---

**3.** *Commonwealth v. Goodman,* 97 Mass. 117 (1867); *Commonwealth v. Boynton,* 84 Mass. (2 Allen) 160 (1861).

**4.** *Barnes v. State,* 19 Conn. 398 (1849).

viction under either of these statutes.[5] Therefore, the trial court erred in concluding that the statutes do not require proof of the defendant's mental state.

The trial court found an "express inconsistency" in each statute's references to both "strict liability" and "proximate cause" because, in its view, the former phrase requires the absence of any mental state and the latter phrase requires a finding of foreseeability—a particular kind of mental state. As we have indicated, each statute does require proof of a mental state—conscious mental activity involving effort or determination—and the element of proximate cause requires application of an objective rather than a subjective standard.

### III.

The trial court also concluded that Colorado's vehicular homicide statute violates constitutional equal protection concepts "since the accused need only be found to have been driving within the presumption range to sustain a conviction...."[6] This conclusion fails to recognize that under section 18–3–106 the jury may take into account *all* the circumstances surrounding the victim's death, including the decedent's conduct, if relevant, when determining if the unlawful conduct of the accused proximately caused the death. *See People v. Dionne, supra.* In addition, section 18–3–106(3) provides that evidence of blood alcohol content is not dispositive of the issue of intoxication. Contrary to the trial court's ruling, the statute does not create any improper classification based solely on the alcohol content of a defendant's blood.

### IV.

The trial court's conclusion that the vehicular homicide and vehicular assault statutes deny an accused the opportunity to

5. Upon proper request by a defendant, the trial court must instruct the jury with respect to the minimum requirement for criminal liability and the definition of a voluntary act.

6. The trial court's order does not specify what improper legislative classification arguably has

rebut the presumption of intoxication is contrary to the General Assembly's express language. Both statutes provide that any presumption raised by a defendant's blood alcohol count does not limit "the introduction, reception, or consideration of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor." Sections 18–3–106(3) and 18–3–205(3). *See People v. Duemig,* 620 P.2d 240 (1980), *cert. denied,* 451 U.S. 971, 101 S.Ct. 2048, 68 L.Ed.2d 350 (1981). *Cf. People v. Hedrick,* 192 Colo. 37, 557 P.2d 378 (1976); *Egle v. People,* 159 Colo. 217, 411 P.2d 325 (1966). An accused has ample opportunity to challenge the statutory presumption by the introduction of evidence supporting such challenge at trial.

The judgment is reversed and the case is remanded to the trial court for further proceedings.

been created by § 18–3–106, and defendant has not alleged that the statute creates a suspect classification or infringes upon a fundamental right. *See Mosgrove v. Federal Heights,* 190 Colo. 1, 543 P.2d 715 (1975).